Thomas and Pennington *vs.* Gregg, *et al.*

(Decided 7th June, 1892.)

JOHN MARSHALL THOMAS, and MARGARET PENNING-TON, Trustees, &c. *vs.* JAMES GREGG, MAURICE GREGG, and LUTHER M. REYNOLDS, Trustees, and others.

*Construction of Will—Execution of Power—Void limitation —Rule against Perpetuities.*

J. G. died in 1890, leaving a will, whereby he gave one-half of his estate, to trustees in trust, for his daughter A. G. T. for life, with remainder to the issue of her body living at her death, *per stirpes*, and not *per capita*, the shares of such of them as might be infants to be held in trust for them until they attained the age of twenty-one years, and then to be delivered over to them. He gave to each of his daughters the power of disposing by will of her share of his estate as fully as though the same belonged to her absolutely, and not as *cestui que trust*, "provided that the said will or wills be made in favor of, and the disposition of the property thereby disposed of be made to, her children or grandchildren, or some of them, or to the children of her said sister, or some of them, but no will or paper writing in the nature of a testament shall be valid or take effect whereby any part of my trust estate shall be given or disposed of to any other person or persons than my grandchildren, or some of them, or

some of my descendants." The testator's said daughter A. G. T. executed a last will and testament in April, 1891, and in it she made the following devise and bequest: "All the estate and property, of whatever kind and wherever situated, which was devised and bequeathed to me or for my benefit by the will of my father, the late J. G. of the City of Baltimore, in the exercise of the power by that will conferred upon me, I give, devise, and bequeath to my children now living and those that may hereafter be born to me, to be divided among them, share and share alike, but during the life of each of my children the share so devised and bequeathed to him or her shall be held by my trustees hereinafter named, with power at any time, and from time to time in their discretion, to sell, lease, exchange, mortgage, or otherwise dispose of the whole or any part thereof, or to make or change any investment as my said trustees may deem best; and with further power to collect and receive the rents, issues, income, and profits thereof. The net income from the share so given to each child, my said trustees shall pay over to the guardian of such child until he or she shall reach the age of twenty-one, and from and after that time to such child so long as he or she shall live." Shortly after the execution of her will A. G. T. died leaving three children, all under the age of twenty-one years. Two of them were born in the life-time of her father J. G. and one was born after the execution of her will. HELD:

1st. That the trust limitation created by the will of A. G. T. under the power contained in the will of her father, J. G. was to be construed as if inserted in the will of the latter; and so construed it transgressed the rule against perpetuities, and was therefore void, inasmuch as a limitation, in the will of J. G. restraining the alienation of said property for the life of his daughter, and for the lives of children who might be born to her after his death, would extend to a life then in being, and to lives which by possibility might come into being after his death.

2nd. That the purport of the limitation for the benefit of A. G. T's children then living and those that might thereafter be born, comprehending them all in one class of objects, was to provide for them all alike, and could not be carried into effect unless it embraced them all.

3rd. That it would defeat the scheme and purpose of the appointment to give the benefit of it to the children born in the life-time of J. G. and disinherit such as might be born after his death.

Thomas and Pennington *vs.* Gregg, *et al.*

4th. That an instrument, in execution or attempted execution of a power must be construed, like other instruments, in such way as to ascertain the intention of the maker.

5th. That the principle that where a power is well executed, and then something is added which is improper, but which can be clearly separated from what is regular, the execution of the power will be held void in part only, the valid portion being sustained, and that which is in excess being rejected, will not sustain the appointment in the present case.

6th. That the trust under the will of A. G. T. being altogether void, the trustees named in her will, could not maintain a bill in equity to compel a delivery to them by the trustees under the will of J. G. of the property sought to be affected by said trust.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken by the complainants, trustees under the will of Mrs. Annie Gregg Thomas, from a *pro forma* decree of the Court below (DENNIS, J.,) dismissing their bill of complaint. The case is stated in the opinion of this Court.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, FOWLER, and BRISCOE, J.

*Skipwith Wilmer,* for the appellants.

*J. S. T. Waters,* and *Arthur W. Machen,* for the appellees.

*James M. Ambler,* filed a brief on behalf of the appellees, the infant defendants.

BRYAN, J., delivered the opinion of the Court.

John Gregg of the City of Baltimore died in February, 1890, having first made his last will and testament. Among other bequests and devises, he made the follow-

ing: "I, in the first place, devise and bequeath one-half part of all my worldly estate, (one-half part of all my property, real, personal and mixed) unto my brother, James Gregg, my nephew, Maurice Gregg, and my friend, Luther M. Reynolds, (called herein my trustees) their survivors and successors, in trust and confidence, however, for the sole and separate use and benefit of my daughter, Annie G. Thomas, (wife of John Marshall Thomas) for and during the term of her natural life, and from and after her death, then in trust to grant and convey, transfer and deliver the same to the issue of her body living at the time of her death, share and share alike, *per stirpes* and not *per capita*." There were other limitations which were to take effect in case she should die without issue of her body living at the time of her death; but as she left three children living at her death, these limitations need not be stated. Another clause of the will was as follows: "Furthermore, I declare and say, as a part of my said will, notwithstanding anything I have already said to the contrary hereof, that should any or all of the issue of either or both of my daughters living at the time of her or their death, (if any there be) be infants, under the age of twenty-one years, then shall the trustees of my said daughters, (and I mean the trustees holding the part of my estate enjoyed by my daughter or daughters at the time of her or their death,) not grant and convey, transfer and deliver as hereinbefore directed, but shall hold the part or shares of my trust estate to which the infant or infants may severally be entitled under the provisions of my said will, for the use and benefit of such infant or infants until the infant or infants shall respectively arrive at the age of twenty-one years, (if she, he or they live to attain that age,) when the same shall pass to and become the property of such infant or infants as fully and in the same manner as though the infant or infants had been adults at the time

of the death of their mother." And another as follows: "It is my will and I hereby authorize and empower each of them, my daughters, to make a last will and testament affecting and disposing of her share or part of my trust estate, (the part to which she as *cestui que trust* may be entitled) as fully and beneficially and effectually as though the property (trust estate) belonged to her absolutely, and not as *cestui que trust*, provided that the said will or wills be made in favor of, and the disposition of the property thereby disposed of, be made to her children or grandchildren, or some of them, or to the children of her said sister, or some of them, but no will or paper writing in the nature of a testament shall be valid or take effect whereby any part of my trust estate shall be given or disposed of to any other person or persons than my grandchildren, or some of them, or some of my descendants." Mrs. Thomas executed a last will and testament in April, 1891; and in it she made the following devise and bequest: "All the estate and property of whatever kind and wherever situated, which was devised and bequeathed to me or for my benefit by the will of my father, the late John Gregg, of the City of Baltimore, in the exercise of the power by that will conferred upon me, I give, devise and bequeath to my children now living, and those that may hereafter be born to me, to be divided among them, share and share alike, but during the life of each of my children the share so devised and bequeathed to him or her shall be held by my trustees hereinafter named, with power at any time, and from time to time, in their discretion, to sell, lease, exchange, mortgage, or otherwise dispose of the whole or any part thereof, or to make or change any investment as my said trustees may deem best, and with further power to collect and receive the rents, issues, income and profits thereof. The net income from the share so given to each child my said trustees shall pay over to

the guardian of such child until he or she shall reach the age of twenty-one, and from and after that time to such child so long as he or she shall live." She died about three months after the execution of the will, leaving three children living at the time of her death, all of them under the age of twenty-one years; two of them were born in the life-time of her father, Mr. John Gregg, and one was born after the execution of her will. The principal question before us is whether the clause which we have quoted from her will is a valid execution of the power contained in her father's will.

It has been always held without question that a limitation under a power of appointment must be construed as if it were inserted in the instrument creating the power. Now, if we read the limitations declared in Mrs. Thomas' will as a part of her father's will, we find that one-half of his estate would be given to Mrs. Thomas for her life, and after her death it would be given to trustees, who were required to hold it and collect the rents, issues, income and profits of it during the lives of her children, including such as might at any time be born to her. The rule against perpetuities is as clear and distinct as any other rule, which has ever been declared by the Courts. There have sometimes been serious questions and difficulties in the application of the rule to the terms of particular instruments; but no difference of opinion exists as to the terms of the rule. It is very well expressed in *Barnum vs. Barnum*, 26 *Md.*, 171: "If an estate be so limited as by possibility to extend beyond a life or lives in being at the time of its commencement, and twenty-one years and a fraction of a year (to cover the period of gestation) afterwards, during which time the property would be withdrawn from the market, or the power over the fee suspended, it is a perpetuity, and void as against the policy of the law which will not permit property to be inalienable

Thomas and Pennington *vs.* Gregg, *et al.*

for a longer period." The question is not determined by looking back on events which have occurred, and seeing whether the estate has extended beyond the prescribed limit; but by looking forward at the time the limitation is made, and seeing whether, according to its terms, there is a possibility that it may so extend. Now, a limitation in Mr. Gregg's will restraining the alienation of this property for the life of his daughter, and for the lives of children who might be born to her after his death, would extend to a life then in being and to lives which by possibility might come into being after his death. In point of fact a child was born to her after his death; but this circumstance makes no difference in the application of the rule. It would be the same if the child had not been born; as it depends on the question whether a child might by possibility be born; and not on the fact that it was actually born. Our conclusion is that the limitation in question transgresses the rule against perpetuities, and is therefore void. It is for the benefit of Mrs. Thomas' children then living, and those that might thereafter be born, comprehending them all in one class of objects. The purport of the limitation is to provide for them all alike, and it cannot be carried into effect unless it embraces them all; it would defeat the scheme and purpose of the appointment to give the benefit of it to the children born in Mr. Gregg's life-time, and disinherit such as might be born after his death. An instrument in execution or attempted execution of a power must be construed, like other instruments, in such way as to ascertain the intention of the maker. When the intention is discovered in the present case, it is found that it seeks to do something which is unlawful. We do not lose sight of the principle that where a power is well executed, and then something is added which is improper, but which can be clearly separated from what is regular, the execution

of the power will be held void in part only; the valid portion being sustained, and that which is in excess being rejected. But this principle will not sustain the appointment in the present case. We quote in illustration of this subject from a learned note to *Bristow vs. Warde*, 2 *Vesey, Junior*, 350, (*Sumner's Edition*,) without citing the numerous authorities there collected: "When a will, or an appointment, in execution of a power, creates limitations, which, at the time of making the will, or of such execution, are more remote than the policy of the law allows, the devise or appointment is void for all purposes, even for that of a gift over to one, who, if the gift had been to him immediately, would have been entitled to receive it." And we may also refer to *Routledge vs. Dorril*, 2 *Vesey, Junior*, 357. By a marriage settlement certain property was held in trust to be transferred and assigned "unto and among all and every the children, and grandchildren, or issue, of the intended marriage, if more than one, in such shares and proportions, and under such restrictions, limitations, and conditions, and at such time, and times, and in such manner and form, as the survivor should from time to time, or at any time or times, by any deed or deeds, writing or writings, executed as aforesaid, or by his or her last will and testament, give, declare, direct or appoint." The survivor here mentioned meant the survivor of the marriage, who was one Elizabeth Dorril. She made an appointment by will of a portion of the property for the benefit of her daughter, Elizabeth Edwards, for life, and after her decease for the benefit of all and every her children by her then or any future husband in equal shares if more than one. At Mrs. Dorril's death there were three children of Mrs. Edwards living. The Court said: "There is no doubt, that under the words of the original power any issue of the intended marriage living at the death of the husband or wife would have been

Thomas and Pennington *vs.* Gregg, *et al.*

competent to receive a share; and there being three children of Elizabeth Edwards living at the death of Elizabeath Dorril, if she had appointed to them, without doubt they might have taken. But she has appointed to Mrs. Edwards for life; and instead of giving it to such of her children, as should be living at the death of their grandmother, she has given to all the children her daughter might have during her life. Those that may be born after the death of the grandmother, cannot be included among those, in whose favor the power may be executed; and the question is, whether those children who might have been the proper objects, shall take. At first I was of opinion, that as she might have appointed to the three children born before her death, when she appointed to all, these three might be considered as the sole objects; but upon considering it farther, and particularly upon *Gee vs. Audley*, I am of opinion, that would be a forced construction; and that the grandmother, in affecting to give this to all the issue her daughter might have at any time, has transgressed the power; and so far being ill executed it is to be considered as not executed, and is totally void."

The question arising in this case was presented to the Circuit Court of Baltimore City by a bill in equity seeking a decree that the trustees under Mr. Gregg's will should be required to deliver the property involved to the trustees under Mrs. Thomas' will. The Circuit Court dismissed the bill. As we have decided the matter in controversy, it is unnecessary to make any detailed statement of the averments of the bill of complaint.

The decree of the Circuit Court must be affirmed; but we shall direct the costs to be paid out of the income of the property devised and bequeathed to trustees by John Gregg for the benefit of Mrs. Thomas.

*Decree affirmed, and costs to be paid
out of the trust property.*

(Decided 8th June, 1892.)