[Civ. No. 68470. Second Dist., Div. Three. July 16, 1984.]

Estate of JOSEPH SILVERSTEIN, Deceased.
EVELYN MILLER et al., Petitioners and Appellants, v.
ROSE BERKIN SILVERSTEIN, Claimant and Respondent.

## Counsel

Robert R. Keimach for Petitioners and Appellants.

No appearance for Claimant and Respondent.

## Opinion

**KLEIN, P. J.**—Appellants Evelyn Miller and Marcia Silverstein (Daughters) appeal from a judgment on their petition for determination of entitlement to estate distribution. The respondent Rose Berkin Silverstein (Wife) has chosen not to file a respondent's brief.

The judgment is affirmed in part, and reversed in part.

### Factual and Procedural Background

On the death of Joseph Silverstein (decedent), disputes regarding entitlement to certain of his assets arose between his daughters and their stepmother, the Wife herein. These were not resolved in spite of a valid will and an executor appointed to carry out its provisions.

The Daughters petitioned the court for determination of entitlement for estate distribution. The executor requested that the trial court deny all the matters prayed for by the Daughters in their petition setting forth detailed reasons.

Judgment was entered after a hearing on the petition. This appeal followed.

### Contentions

I. It was prejudicial error for the trial court to: (a) Prevent the presentation of all competent, relevant and material evidence; (b) form or express

an opinion prior to the case being submitted; (c) show an unsympathetic attitude toward the litigation; (d) allow the executor to participate in the trial without prior court order as required by Probate Code section 1081.

II. The trial court erred in allowing the Wife's disputed jewelry as a gift.

III. The trial court committed error in applying the gift law to postdeath deposits of $1,200 in bond coupons and decedent's $541.60 social security check.

IV. The trial court erred in allowing as a proper payment a creditor's claim for $400 to pay for the erection of a plaque in a temple and the reciting of postdeath prayers (Kaddish) contrary to the established case law definitions of funeral expenses.

## DISCUSSION

I. (a) *The trial court did not prevent the presentation of competent, relevant and material evidence.*

The Daughters' contention that they were denied a full and fair opportunity to present evidence on the issues since the trial court "cut off testimony" is wholly unfounded. To substantiate their claim, the Daughters refer to statements made by the trial court. These cannot be viewed in isolation.

A detailed reading of the pages preceding and following those cited by the Daughters clearly shows that it was only after thoroughly exhausting a subject did the trial court seek to end it and move on to the next subject.

(b) *The trial court did not form or express an opinion prior to the case being submitted.*

The trial court correctly sought information regarding the $400 paid by the estate for a memorial plaque for decedent to be placed in the Temple and for the Kaddish to be recited to determine whether that expense was justified.

Regarding the payment of the medical bill, the trial court considered the explanation given by counsel for the executor as well as to the objections raised by the Daughters. The trial court then ruled that since Medicare had already paid the estate for the doctor's services to the decedent, the only legal and ethical course of action open to the estate would be to pay the doctor.

Contrary to the Daughters' contention, it was not prior to the case being submitted, but only after listening to both parties on the saying of the Kaddish and the erection of the plaque that the trial court expressed its opinion.

(c) *The trial court did not display an unsympathetic attitude toward the litigation.*

A review of the record has convinced us that the Daughters' assertion that the trial court showed an unsympathetic attitude toward the litigation is unwarranted.

(d) ▇ *Objections to participation by the executor were not raised at the appropriate times in the trial court and therefore cannot be raised now.*

At the beginning of the trial, the Daughters' attorney clearly stated that he had no objection to counsel for the executor being present in order to protect the rights of his client. The attorney said his *objection* was only to *"any participation he may have in the evidence to be presented."* The trial court responded that if such a problem arose, it would rule on it at the appropriate time.

However, though the Daughters cite a number of instances where counsel for the executor interceded in the conduct of the trial, there is no evidence that the Daughters ever objected to the same. It is elementary that the Daughters' objection should have been voiced at the time of such participation in order to be preserved on appeal.

▇ As stated in Witkin, California Evidence (2d ed. 1966) section 1285, page 1188: "Where inadmissible evidence is offered, the party who desires to raise the point of erroneous admission on appeal must *object* at the trial, *specifically* stating the grounds of his objection, and directing the objection to the *particular evidence* which he seeks to exclude. Obviously, failure to object at all waives the defect."

Evidence Code section 353, subdivision (a), codifies this settled doctrine by making the error in admission nonreversible unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; . . ."

▇ Therefore, even if grounds existed at trial for objecting to participation by executor's counsel, the Daughters failed to preserve it by making a timely and specific objection. Hence, it cannot now be reviewed on appeal.

II. *A finding of fact made by the trial court is accepted as correct on appeal, unless there is no substantial evidence to support it.*

 On appellate review of conflicting evidence, the presumption is in favor of the judgment. " '[I]n examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the finding.' " (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, p. 4237.)

 The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, controverted or not, which will support the decisions of the trial court. (6 Witkin, Cal. Procedure, *op. cit. supra.*)

Since the testimony given under oath by the Wife does constitute such substantial evidence, the decision of the trial court regarding the jewelry and the money deposited is affirmed.

III. *the trial court erred in concluding that the $400 payment by the estate to the Temple for the erection of a plaque and the recitation of Kaddish was proper.*

Decedent had drawn up a valid will which was in existence at the time of his death. It would be possible to charge the estate for the above-named expenses, only if they could legitimately be held to be "funeral expenses." There are no other provisions in the will which can even remotely be held to permit the charging of these expenses against the estate.

In the instant case, the Wife testified that she had ordered the plaque because it is considered part of the "funeral expense" and she also wanted Kaddish to be said for a year and on each anniversary of the decedent's death, since the decedent, as a practicing Jew had wanted a Jewish burial. The Wife had not paid for these expenses, but had billed the estate.

Our Supreme Court has held that: "The term *'funeral expenses'* has reference to those *necessary and,* in fact, *compulsory expenditures, the necessity for which arises immediately upon and after the death of the decedent* and which embraces the coffining, embalmment, arraying, and sepulture or cremation of his body, together with those accustomed forms and ceremonies which attend upon the present disposition of his remains. (2 Woerner

on Administration, 3d ed., sec. 358.) The term has been held to include the expense of a monument or tombstone over the grave of the deceased (*Fairman's Appeal*, 30 Conn. 205; *Pease* v. *Christman*, 158 Ind. 642 [64 N. E. 90]), but not to include the cost of subsequently inclosing the burial lot (*In re Meyers Estate*, 18 Phila. (Pa.) 42), nor to include the making of a portrait of the deceased (*Appeal of McGlinsey*, 14 Serg. & R. (Pa.) 64), nor to embrace the cost of reinterment unless the first place of interment was found to be improper ([*Watkins*] v. *Romine*, 106 Ind. 378 [7 N.E. 193])." (*Estate of Bauer* (1925) 196 Cal. 757, 759-760 [239 P. 49, 40 A.L.R. 1457], italics added; see also *Seitz* v. *Engert* (1936) 13 Cal.App.2d 302, 303 [56 P.2d 1242].)

Cases from other jurisdictions agree with this limited definition of what can legitimately be claimed as "funeral expenses." Expenses which were not contemporaneous with the funeral, such as those for the services of a clergyman a year after the death of the decedent have been held to be not payable out of the estate as funeral expenses. (*In re May's Estate* (1936) 160 Misc. 497 [290 N.Y.S. 327, 330]; affd. (1938) 255 App.Div. 31 [5 N.Y.S.2d 684].)

California has not addressed the specific issue of whether the saying of the Kaddish can be considered a "funeral expense." A New York court held that a voluntarily made expenditure for the saying of Kaddish could not be charged against the estate as a funeral expense since it was in no true sense incident to or part of the funeral service of the deceased. (*In re Feifer's Estate* (1934) 151 Misc. 54 [270 N.Y.S. 905, 906].)

The saying of the Kaddish can be analogized to masses said for repose of the souls of the dead. Expenses incurred for these have also been held not to be funeral expenses. (*In re Nolan's Will* (1950) 198 Misc. 979 [99 N.Y.S.2d 622, 623].) It is only where the masses form an "integral part of the funeral ceremonies" that they are entitled to be included in the funeral expenses. (*In re Smallman's Will* (1931) 138 Misc. 889 [247 N.Y.S. 593, 602].)

In light of the California Supreme Court decision in *Estate of Bauer* defining what funeral expenses are, the $400 paid to the Temple cannot be permitted to be charged against the estate. The mere fact that the executor allowed it as a proper expense does not make it so in the eyes of the law. As stated in the *Estate of Hite* (1911) 159 Cal. 392, 396 [113 P. 1072], where a claimed funeral expense is manifestly improper, the mere fact that an executor has expended this amount is not sufficient to authorize its deduction.

## Disposition

The award to the Wife of the money and jewelry in dispute is affirmed. The charge of $400 against the estate is reversed, and the case remanded for a determination in accordance with this opinion. Each party to bear own costs on appeal.

Lui, J., and Arabian, J., concurred.

On July 24, 1984, the judgment was modified to read as printed above. A petition for a rehearing was denied August 21, 1984.