[No. G013816. Fourth Dist., Div. Three. June 30, 1994.]

DONNA SHAVER, Individually and as Trustee, etc., Plaintiff and Appellant, v.
ROBERT A. CLANTON et al., Defendants and Appellants.

570

COUNSEL

Carlos F. Negrete for Plaintiff and Appellant.

Coontz & Matthews and M. Stephen Coontz for Defendants and Appellants.

OPINION

**SONENSHINE, J.**—This case of first impression requires us to analyze every first-year law student's worst nightmare: the rule against perpetuities. (1) "No interest is good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest." (Gray, The Rule Against Perpetuities (4th ed. 1942) § 201, p. 191.) As one sage stated in 1916 regarding the rule's applicability, "Before we pull the heavens down,

let us sit and think a little."[1] It has been said, "The rule against perpetuities is as clear and distinct as any other rule which has ever been declared by the court. . . . No difference of opinion exists as to [its] terms . . . ."[2] Another commentator was perhaps more accurate, however, when he observed, "The rule . . . is one upon which the authorities refuse to come to any semblance of agreement as to its reason for existence."[3]

At issue is whether a lease amendment which provides for perpetual options to renew is void because it violates the rule. Until 1991, California law applied the rule to commercial transactions and, accordingly, to options to renew. That changed with the adoption of the Uniform Statutory Rule Against Perpetuities. Now, commercial, nondonative transactions are exempt from the rule. However, if, as here, the transaction involves the lease of a town or city lot, it is limited to 99 years under Civil Code section 718.

## I

Robert and Helen Clanton entered into a 10-year lease with Martin Wagner for shopping center space, effective May 1, 1971. The lease provided for a minimum annual rent of $11,400 and an "additional . . . amount, if any, by which Three % of [the] gross sales for each calendar year period exceeds the guaranteed minimum rental . . . ." It also provided a renewal option for another 10 years.

Emerson Stanley purchased the property shortly after the lease was executed. During the first 10-year term, no percentage rent was ever due. When the lease came up for renewal, the Clantons requested the 3 percent provision be deleted. Stanley agreed and his counsel sent a letter memorializing the extension on those terms.

In 1985, the Clantons attempted to sell the business and assign their rights to the Rosenbergs. Stanley executed an amendment removing the percentage rent provision and adding an option to renew the lease for two additional five-year periods. However, the sale was subsequently canceled and the assignment and amendment rescinded, returning all parties to their 1981 status quo.

The Clantons and Stanley amended the lease in 1988 and again in January 1989. The last amendment granted the Clantons options to extend the lease

---

[1]Note (1916) 14 Mich. L.Rev. 231, 233.

[2]*Thomas* v. *Gregg* (1892) 76 Md. 169, 174 [24 A. 418, 419].

[3]Langeluttig, *Options to Purchase and the Rule against Perpetuities* (1931) 17 Va.L. Rev. 461; see also Berg, *Long-Term Options and the Rule against Perpetuities* (1949) 37 Cal.L.Rev. 1, 2.

for additional five-year periods beginning at the end of each prior lease period and gave them a right of first refusal if the property were offered for sale.

Donna Shaver is Stanley's daughter and sole heir. Shortly after her father died, she challenged the validity of the lease amendments and filed the underlying complaint seeking declaratory relief, rescission, an accounting, back rent, and damages for fraud. The trial court concluded her fraud allegations were without foundation and the 3 percent provision had been validly deleted from the lease. The 1988 amendment was valid, but the 1989 amendment was not because "the parties attempted to provide for option renewals into infinity. This they cannot do. . . . Therefore, this provision of the lease cannot be upheld, [and] since it is an integral part of this amendment the whole amendment goes out."[4] The court ruled there was no prevailing party and did not award costs. This appeal followed.

## II

The common law policy favoring alienation of property led to the establishment of the rule against perpetuities. The sole test was whether an interest might vest beyond the maximum period permitted by the rule. As stated by our Supreme Court in *Wong* v. *Di Grazia* (1963) 60 Cal.2d 525 [35 Cal.Rptr. 241, 386 P.2d 817], "The rule . . . originated as a rule of property law during the mercantilistic period of English history. . . . The social order of 1682 demanded as to its property transactions certainty in title and fixation of ownership; the idea of titles which had not vested or ownership which remained inchoate was necessarily anathema. Indeed, the basic purpose of the rule was to limit family dispositions, and in that context the period of lives in being plus 21 years served as a proper measurement. Only later by an overextension of nineteenth century concepts did the courts apply the rule to commercial transactions." (*Id.* at p. 533; see also 4 Witkin, Summary of Cal. Law (9th ed. 1987) § 377, p. 568.)

From the earliest stages of the doctrine's development, the English courts and many American courts found covenants to renew leases exempt from the

---

[4]Shaver's complaint made no reference to the 1989 amendment; the complaint was never amended. Nevertheless, the court allowed her to introduce the 1989 amendment into evidence and, in one sentence of a supplemental brief and in closing argument, her counsel challenged its validity. Although the Clantons understandably challenge the method by which the issue of the rule against perpetuities was raised below, and the trial court's failure to permit them to brief the issue, the rule is one of public policy and its application is a matter of law. Its operation is not waived by failure to raise it in the trial court, and it must be considered even though raised for the first time on appeal. (*United California Bank* v. *Bottler* (1971) 16 Cal.App.3d 610, 616 [94 Cal.Rptr. 227].)

rule on two grounds: "First, under the view that the Rule is designed to destroy indirect restraints upon the practical alienability of property which are brought about by remote nonvested future interests, covenants to renew leases, without time limits, do not suspend the practical power to alienate land. So long as the value of the land does not drop to the point where the rental becomes prohibitive, the lessee always has in himself the legal as well as the practical power to convey that which is substantially a fee simple. On the other hand, when the lease becomes unprofitable, the lessee will give up his right to renew and the lessor will resume complete ownership. [¶] Second, and of greater importance, is the proposition that the perpetual renewal covenant should never have been classified as an 'exception' to the Rule, but that it should have been considered to be outside the province of the Rule." (Berg, *Long-Term Options and the Rule Against Perpetuities, supra*, 37 Cal.L.Rev. at p. 23, fn. omitted.)

Simply stated, the purpose of the rule against perpetuities was found to be inapt to commercial arrangements. "The courts must have realized that covenants to renew leases were devices employed by business [people] to secure the safety of their investments in real property business enterprises." (Berg, *Long-Term Options and the Rule Against Perpetuities, supra*, 37 Cal.L.Rev. at p. 24.) "The lessor's desire to retain ownership of the land as a good business investment might influence him [or her] in granting a lease with such a convenant. On some occasions he [or she] might be motivated by a sentimental unwillingness to part with the land, but in any event it is difficult to twist the transaction so as to impute to him [or her] the desire to create an inalienable interest." (*Ibid.*)

In 1991, California became the 12th state to adopt the Uniform Statutory Rule Against Perpetuities (Uniform Act). (Prob. Code, § 21200 et seq.)[5] Twenty jurisdictions have now adopted it. The California Law Revision Commission observed the common law rule could operate harshly and invalidate a disposition if there were any conceivable possibility it would violate the rule, regardless of whether it was likely to do so or how reasonable the disposition appeared. (See Recommendation Relating to Uniform Statutory Rule Against Perpetuities (Sept. 1990) 20 Cal. Law Revision Com. Rep. (1990) pp. 2501, 2511 [hereinafter Report].) Noting the history of the common law rule in California was "convoluted and confusing" (*ibid.*), the commission sought uniformity, simplicity and easy administration. (*Id.* at p. 2513.) Accordingly, the Uniform Act supersedes the common law rule against perpetuities (§ 21201) and applies to nonvested property interests regardless of whether they were created before or after January 1, 1992. (§ 21202, subd. (a).)

---

[5]All statutory references are to the Probate Code unless otherwise specified.

## III

Until the adoption of the Uniform Act, California common law applied the rule against perpetuities to commercial transactions. Accordingly, the rule was applied to such interests as options to renew, rights of first refusal, and commercial leases.[6] ■ The Uniform Act changed California law by explicitly excluding such commercial transactions from coverage under the rule.[7] The rule is now irrelevant to such transactions: "It makes no sense to apply a rule based on family-oriented donative transfers to interests created by contract whose nature is determined by negotiations between the parties." (Rep., *supra*, at p. 2516.) "The rationale for this exclusion is that the rule against perpetuities is a wholly inappropriate instrument of social policy to use as a control over such arrangements. The period of the rule—a life in being plus 21 years—is not suitable for nondonative transfers . . . ." (1991 Addition to Law Revision Com. com., 54A West's Ann. Prob. Code, § 21225 (1994 pocket supp.) p. 60 [hereafter Commission 1991 Addition].)

The Law Revision Commission Comment explains, "[S]ubdivision (a) [of section 21225,] is . . . inconsistent with decisions holding the common law rule to be applicable to the following types of property interests or arrangements when created in a nondonative, commercial-type transaction, as they almost always are: options [citation]; preemptive rights in the nature of a right of first refusal [citations]; leases to commence in the future, at a time certain or on the happening of a future event . . . ." (Com. 1991 Addition, *supra*, at p. 60.)

■ The parties' 1989 amendment is exempt from the rule because it involves the nondonative transfer of three subdivision (a)-type exclusions: an option to renew, a right of first refusal, and a lease to commence in the future at a time certain. Shaver concedes the Probate Code governs, but argues the Uniform Act should not apply to commercial transactions between individuals where "controlling the duration of certain interests and allowing for free alienability of property is clearly desirable." She relies on *Metropolitan Transportation Authority* v. *Bruken Realty Corp.* (1986) 67 N.Y.2d 156 [501 N.Y.S.2d 306, 492 N.E.2d 379], and argues only large

---

[6]However, Civil Code section 718 validated leases of town or city lots up to 99 years. (See *post*, pt. IV.)

[7]Section 21205 states: "A nonvested property interest is invalid unless one of the following conditions is satisfied: [¶] (a) When the interest is created, it is certain to vest or terminate no later than 21 years after the death of an individual then alive. [¶] (b) The interest either vests or terminates within 90 years after its creation."

Section 21225 lists the exclusions. As relevant here, it states: "This chapter does not apply to any of the following: [¶] (a) A nonvested property interest . . . arising out of a nondonative transfer . . . ."

commercial or governmental entities should be excluded from the common law rule. But *Metropolitan* was decided prior to the enactment of the Uniform Act in a jurisdiction which has still not adopted it. Moreover, it was specifically cited in the comment to point out "the inappropriateness of the period of a life in being plus 21 years to cases of commercial . . . transactions and noting that the rule against perpetuities can invalidate legitimate transactions in such cases." (Com. 1991 Addition, *supra*, at p. 60.)

Shaver argues even if the Uniform Act applies to commercial transactions, it should not apply here. She claims the transaction was donative because it had "some of the elements of a donative, family-type transaction" and was "at least quasi-donative." The question is whether the transaction was "essentially gratuitous in nature, accompanied by donative intent on the part of at least one party to the transaction . . . ." (Com. 1991 Addition, *supra*, at p. 60.)

The amendment ties the monthly rental for each new five-year period to "the smallest value of the Cost of Living Indexes published by the Federal Government as measured over the prior five (5) year period." It is a common business practice to make cost-of-living adjustments in long-term leases. (See *Wolfen* v. *Clinical Data, Inc.* (1993) 16 Cal.App.4th 171, 175 [19 Cal.Rptr.2d 684].) Shaver stresses the Clantons testified Stanley was "a close personal friend," "wanted to help them out," and their son was "the son . . . Stanley never had." Although the lease amendments did give the Clantons favorable terms, there is no evidence of any detriment to Stanley which would characterize the amendments as donative, nor that either party had donative intent. The terms Stanley offered in 1985 to a third party, the Rosenbergs, were similar to those he offered the Clantons, tenants for more than 16 years, in the 1988 amendment. Moreover, the terms were not specific to the Clantons. The 1989 amendment allowed the Clantons to assign the lease with Stanley's written consent which he could not unreasonably withhold. Since the transaction was commercial and nondonative, the rule against perpetuities does not apply.

IV

The trial court found although the original lease and the 1988 amendment were valid, the 1989 amendment and the provision for option renewals were not, because "the parties attempted to provide for option renewals into infinity. This they cannot do. . . ." This would have been error even without the adoption of the Uniform Act because under Civil Code former section 715.5, the court was "required . . . to construe or reform [a] document to avoid violating the Rule if it is possible to do so consistently

with the creator's general intent." (*Taormina Theosophical Community, Inc.* v. *Silver* (1983) 140 Cal.App.3d 964, 977 [190 Cal.Rptr. 38].)[8]

Civil Code section 718, which both parties concede applies, provides, "No lease or grant of any town or city lot, which reserves any rent or service of any kind, and which provides for a leasing or granting period in excess of 99 years, shall be valid." The parties' 1989 amendment, when read in context with Civil Code section 718, should have been construed to avoid a violation of the rule against perpetuities. As explained over 90 years ago by our Supreme Court in *Harter* v. *San Jose* (1904) 141 Cal. 659 [75 P. 344], a lease in violation of Civil Code section 718 *"would not be void except as to the excess of the period."* (141 Cal. at p. 667, italics added; see also 4 Witkin, Summary of Cal. Law, *supra*, § 550, p. 719.)[9]

By adopting the Uniform Act while preserving Civil Code section 718, we conclude the Legislature intended the two statutes to be read together. When that is done, the rule is clear: commercial, nondonative transactions such as options to renew, rights of first refusal, and commercial leases are exempt from the provisions of the Uniform Act (§ 21225), but if they involve a lease or grant of a town or city lot, they are limited to 99 years. (Civ. Code, § 718.)[10]

For these reasons, the 1989 amendment is valid and gives the Clantons a series of five-year options to renew their lease on the terms stated in the lease amendment. The total term of the lease, however, is limited to 99 years from its effective date, May 1, 1971.[11]

---

[8]The principle requiring a court to reform a disposition to effectuate the parties' intentions was adopted in section 21220, in the Uniform Act.

[9]The trial court relied on *Epstein* v. *Zahloute* (1950) 99 Cal.App.2d 738 [222 P.2d 318] which held a right to perpetual renewal of a lease violates Civil Code section 718. But as explained above, *Epstein*'s holding is a departure from a clear line of case law holding a lease in excess of a statutory period is not void except as to the excess. (See, e.g., *Harter* v. *San Jose, supra*, 141 Cal. at p. 667; *Klepper* v. *Hoover* (1971) 21 Cal.App.3d 460, 464-465 [98 Cal.Rptr. 482]; *Fisher* v. *Parsons* (1963) 213 Cal.App.2d 829, 842 [29 Cal.Rptr. 210]; *Kendall* v. *Southward* (1957) 149 Cal.App.2d 827, 828 [308 P.2d 915].)

[10]Section 21225, in the Uniform Act does not totally eliminate the ban against open-ended real estate transactions. As explained above, city or town lot leases can last no longer than 99 years from inception. For other examples of statutory limitations preserved by the Legislature, see Civil Code sections 715 (lease to commence at time certain or upon happening of a future event is invalid if not commenced within 30 years), 717 (lease of agricultural or horticultural land limited to 51 years), 718f (leases for production of minerals, oil, gas or other hydrocarbons limited to 99 years), 719 (leases of city-owned or -managed property limited to 99 years).

[11]We also note prior to the adoption of the Uniform Act, Civil Code section 718 served as a "lengthening" statute, preserving interests from the harshness of the rule against perpetuities. Now, its function is a "limiting" one.

## V

■ Shaver also argues the court erred by finding the 3 percent provision was deleted by the amendments. We disagree.

Where there is any substantial evidence, either contradicted or uncontradicted, in support of the factual conclusion reached by the trial court, its decision must be affirmed. (*Estate of Silverstein* (1984) 159 Cal.App.3d 221, 226 [205 Cal.Rptr. 294].) Stanley's attorney testified the 3 percent provision was deleted because "Mr. Clanton refused to extend the lease with that provision in there, so it was taken out." The agreement memorialized in Stanley's attorney's letter indicates the percentage provision was deleted. The original lease sets forth the rent under "minimum rental" and "additional rental," the total of which is the annual rent. The 1981 amendment defines rent as "annual rental amount of $16,800.00" and does not break up the amounts into "minimum" and "additional."

In its statement of decision, the trial court found, "The 1970 Lease provided for fixed rent plus 3% gross sales, whichever was greater. When the lease came up for renewal in 1990 Clanton rebelled against the 3 percent clause. Stanley, through his attorney, acquiesed [*sic*] to the deletion of this provision in an exchange of letters." We must resolve every evidentiary conflict in favor of the judgment if it is supported by substantial evidence. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; *Orange County Employees Assn.* v. *County of Orange* (1988) 205 Cal.App.3d 1289, 1293 [253 Cal.Rptr. 584].) The evidence requires we affirm that portion of the judgment finding the 3 percent provision was deleted.

## VI

Both parties contend they were the prevailing party entitled to attorney fees and costs. Under Civil Code section 1717, the determination of whether there is a prevailing party is discretionary. (Civ. Code, § 1717, subd. (b)(1).) In view of our holding, however, the Clantons clearly prevail. Accordingly, the matter is remanded to the trial court with directions to determine the amount of attorney fees and costs to which the parties are entitled. (*McLarand, Vasquez & Partners, Inc.* v. *Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1456 [282 Cal.Rptr. 828].)

### DISPOSITION

The judgment is reversed as to the validity of the 1989 Amendment and affirmed as to the deletion of the percentage provision. The total term of the

lease with amendments is limited to 99 years from its effective date, May 1, 1971. The matter is remanded and the trial court directed to determine the amount of attorney fees and costs to which the Clantons are entitled. The Clantons shall recover their costs on appeal.

Wallin, Acting P. J., concurred.

**CROSBY, J.,** Concurring.—The majority opinion reaches a correct result, but the holding is hornbook law and hardly worthy of publication. (See, e.g., 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 550, pp. 719-720; Civ. Code, § 718.) Moreover, open-ended leases and options in perpetuity must be about as common as polar bear sightings in Death Valley. The Court of Appeal is not likely to see another such case in the next 99 years.

A petition for a rehearing was denied July 22, 1994, and the petition of appellant Donna Shaver for review by the Supreme Court was denied September 14, 1994.