RENDERED: JANUARY 5, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0345-MR

RUSSELL VANOVER, JR.                          APPELLANT


APPEAL FROM LAUREL CIRCUIT COURT
v.          HONORABLE GREGORY A. LAY, JUDGE
ACTION NO. 21-CI-00218


MARTHA BAKER, IN HER
CAPACITY AS EXECUTRIX OF THE
ESTATE OF JACK VANOVER, JR.;
MARTHA C. BAKER; AND
RANDALL VANOVER                           APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: This appeal addresses the validity of a right of first refusal

for a tract of real property contained in an Option Agreement and the application of

Kentucky Revised Statutes (KRS) 381.225. The issue on appeal is whether the

right of first refusal (the Refusal Option) constituted a restraint on alienation and,

thus, was void. The Laurel Circuit Court granted summary judgment in favor of

the defendants, concluding that the 2016 option agreement was void *ab initio*, and denied the plaintiff's motions to amend the complaint and to alter, amend, or vacate the judgment.  We reverse and remand.

Jack Vanover Jr. (Jack) owned real estate in the Cold Hill Community of Laurel County, Kentucky, and on October 25, 2016, Jack's nephew, Russell Vanover Jr. (Vanover), purchased property from Jack.  At the closing, Jack and Vanover entered into a separate Option Agreement related to a bordering, 5.55-acre tract of real property.  The Option Agreement provided as follows:

**OPTION AGREEMENT**

**THIS OPTION AGREEMENT**, is made and entered into effective as of October 25, 2016 (the "Agreement"), among Jack Vanover, Jr. of London, KY ("Seller"), and Russ Vanover ("Purchaser").

**WHEREAS** Seller owns a certain parcel of real estate ("Property") located in the Cold Hill community of Laurel County, Kentucky and more particularly described in Deed Book 641, Page 186 in the Laurel County Court Clerk's office being more particularly described in the attached Exhibit 1; and

**WHEREAS** Purchaser desires to acquire the Property in fee; and

**WHEREAS** Seller desires to grant to Purchaser an irrevocable option to acquire the Property under the conditions set forth herein;

**NOW, THEREFORE**, in consideration of the foregoing premises and mutual agreements contained

herein and intending to be legally bound the parties agree as follows:

1. Seller does here by grant to Purchaser an exclusive and irrevocable right of first option (the "First Option") and right of first refusal, ("the Refusal Option") but not the obligation, to purchase the Property commencing on the date of execution.

2. In consideration for this option, Seller acknowledges the receipt and sufficiency of consideration, namely one hundred dollars ($100.00). Receiving full payment for this option, the parties deem it an irrevocable option.

3. For the purposes of this Agreement, a bona fide offer requires: (1) an enforceable sales contract, signed by both parties with the owner's receipt of nonrefundable consideration from the third party based on a percentage of the purchase price and (2) a letter of credit or other confirmation from a financial institution that the third party possesses the necessary funds to close the sale.

4. The Refusal Option will be triggered by any of the following events: (1) the Seller's receipt of a bona fide offer as described herein, (2) a transfer of the Property to anyone other than the child of the Seller, and (3) any foreclosure on the Property (collectively, "triggering events").

5. Upon receipt of a bona fide offer or occurrence of a triggering event, Seller

shall notify Purchaser by certified, return receipt mail including all documents related to the bona fide offer, the third party and the triggering event.

6. The Purchaser shall have thirty (30) days within which to notify the Seller by certified return receipt mail, he intends to exercise his Refusal Option.

7. This agreement constitutes and contains the entire agreement between the parties and supersedes any prior agreements of the parties. Any waiver or modification of this agreement must be in writing and signed by all parties. This agreement may be executed in any number of counterparts all of which shall be deemed an original and all of which constitute one document. The invalidity of any one provision shall not affect the validity or enforceability of any other or remaining provisions. This agreement shall inure to and be binding on all successors, assigns, and estates of the parties and shall run with the land. All notices are to be sent via U.S. Mail, Facsimile or Courier to the addresses first set forth. This agreement shall be governed by the laws, rules and regulations of the Commonwealth of Kentucky.

8. The Purchaser shall pay all fees for the recording of this Agreement in the Laurel County Clerk's Office, London, KY.

**IN WITNESS WHEREOF**, the parties hereto have executed this agreement effective as of the date first above written.

By General Warranty Deed dated August 6, 2020, Jack transferred the 5.55-acre tract of property to his siblings, Randall Vanover (Randall) and Martha C. Baker (Martha), which qualified as a triggering event under the Option Agreement. This deed was filed with the Laurel County Court Clerk's Office.

Based upon the foregoing, Vanover commenced the underlying action on March 28, 2021, by filing a verified complaint with the Laurel Circuit Court against Jack, Randall, and Martha (collectively, the defendants or appellees). Because Randall and Martha were not Jack's children, the Refusal Option was triggered. Jack did not provide Vanover with his right to exercise the First Option or the Refusal Option before conveying the property, and Vanover did not discover that the property had been conveyed until seven months later. In his complaint, Vanover alleged causes of action for breach of contract as to Jack, for tortious interference with a contract as to both Randall and Martha (as they had knowledge of the Option Agreement), and for temporary and permanent injunctive relief against all of the defendants. Based upon these allegations, Vanover sought compensatory damages, an order declaring his rights and interest in the land and his right to purchase the property for fair market value, a trial by jury, pre- and post-judgment interest, injunctive relief, and reasonable attorney fees.

The defendants filed an answer to the complaint, asserting that the complaint failed to state a claim or cause of action upon which relief could be

granted, disputing Vanover's claim to recover attorney fees, and pleading several affirmative defenses. They specifically argued that the Option Agreement was unenforceable under Kentucky law because it failed to include an option price and a stated duration (or expiration date in response to requests for admission).

In September 2021, the defendants filed a motion for summary judgment. They argued that the Option Agreement was void and unenforceable because (1) it did not include an option price at which Vanover could purchase the property, and (2) it purported to be for an irrevocable, perpetual duration in violation of KRS 381.225 and constituted an unreasonable restraint on alienation. Although there was a dispute as to whether the $100.00 purchase price recited in the Option Agreement had been paid (the defendants denied that it had been paid while Vanover contended it had been paid in cash), the defendants conceded for purposes of the motion that it had been paid.

In his response, Vanover argued that the Refusal Option was valid and enforceable; the defendants focused solely on the First Option, which Vanover was not seeking to enforce. He agreed that the First Option had the potential to suspend the power of alienation beyond the permissible period of 21 years. However, the Refusal Option did not restrain an individual from conveying possession of the land in fee simple absolute. Vanover argued that a right of first refusal did not suspend the power of alienation and would not come into play until

-6-

the property owner obtained a sales contract (or, in this case, a triggering event occurred.) This also did not require a specific purchase price. Vanover should have had 30 days after the triggering event to notify Jack that he intended to exercise the Refusal Option. The defendants disputed this argument in their reply, stating that Vanover was conflating "alienation" with a "sale" and pointing out that Jack could not gift or transfer by will the property to anyone other than his children. The Refusal Option was perpetual, never-ending, and ran with the land. It therefore violated KRS 381.225, they argued, and was void.

The defendants took Jack's deposition in September 2021. He had purchased the 5.55-acre tract that was the subject of the Option Agreement from his older brother. He denied that he had received $100.00 from Vanover when the Option Agreement was signed. Jack stated that the Option Agreement coincided with Vanover's purchase of Jack's home. Jack did not know about the Option Agreement prior to that purchase. He said that at the closing on the sale of the home, Vanover "threw in at the end that he wanted to do, and it was basically well, if you don't do this, I'm not going to buy your property. So that's why I agreed to give him that purchase option, not realizing the consequences of it or whatever." Jack said that he had not had any intention of selling the 5.55-acre tract and only signed the agreement so that Vanover would buy his house on the adjoining tract. He would not have signed the Option Agreement if he had understood it. He said

that Vanover wanted to build apartments on the 5.55-acre tract, which Jack did not want to happen. When asked if he intended to abide by the agreement once he signed it, Jack stated that he never thought Vanover would ever enforce it. And he thought he could sell it to his daughter as set forth in the agreement.

Jack testified that he transferred the subject property to his brother and sister in August 2020 but did not notify Vanover prior to the conveyance. He mentioned it to Vanover about three months later but Vanover "blew [him] off." Jack said that he transferred the property to his siblings because he was not well and wanted to go ahead and put the property in their names. "It was already in my will, anyway. It had been in my will for years that it would be transferred to them if something happened to me." His siblings did not know about the agreement with Vanover when Jack conveyed the property to them. Jack agreed that the deed listed the fair market value of the property as $15,000.00, but he believed it was worth much more. Vanover came to Jack's house in March 2021 to confront him about violating the Option Agreement. Jack recalled telling Vanover that he had cancer and was dying but did not recall telling him that he (Jack) had violated the agreement and that Vanover would have to do what he had to do.

In November 2021, Vanover moved for leave to file a first amended complaint to add a claim for fraud based upon Jack's admission during his deposition that Vanover would not have purchased the real property unless the

Option Agreement was executed, that Jack never intended to abide by its terms, that Jack desperately needed to sell his property, and that Vanover reasonably relied on the Refusal Option and purchased Jack's home. Jack continued to disregard the agreement, and his fraudulent conduct injured Vanover. The defendants objected to the motion as futile based upon their arguments raised in the motion for summary judgment.

Also in November 2021, Vanover moved the court to compel discovery, including Jack's Last Will and Testament as well as his bank statements from 2016 through 2020. The defendants objected to this motion, again, based upon the arguments in their motion for summary judgment. Even if the motion for summary judgment were to be denied, such records were not reasonably calculated to lead to the discovery of relevant, admissible evidence.

The court heard arguments from the parties on November 12, 2021. The defendants argued that the Refusal Option impaired Jack's right to alienate the property by gift, intestacy, or will beyond the permissible period and was therefore void under the statute. It was not reformable, and there was no "wait and see" route available. Vanover also discussed his motion to amend the complaint.

On December 8, 2021, the circuit court entered an order granting the defendants' motion for summary judgment. The court analyzed both the First Option (which Vanover conceded was void) and the Refusal Option. As to the

Refusal Option, the court agreed with the defendants that Vanover's argument ignored the fact that the power of sale is not the same as the power of alienation. Here, "the triggering events speak not only to the sale of the property at issue, but to any transfer of ownership of the property. While the Agreement does not suspend entirely the power of alienation, the triggering events contained therein quite clearly place limitations on the property owner's ability to freely convey by gift or devise." The court observed that "[i]f enforceable, the Option Agreement would prevent Jack and his heirs and assigns from ever gifting or devising the property (other than to Jack's children, if any) – thereby restraining Jack's ability to freely convey the property, whether or not for consideration." The court concluded that because the Option Agreement purported to bind the heirs and assigns of Jack and Vanover perpetually, irrevocably running with the land, it violated KRS 381.225 (the codified rule against restraints upon alienation) because it was conceivable that the contingent interest may not vest within the permissible period. Therefore, the Option Agreement was void *ab initio*, and the defendants were entitled to a judgment as a matter of law. The court dismissed the complaint with prejudice but did not include language to make the order final and appealable pursuant to Kentucky Rules of Civil Procedure (CR) 54.02.

Vanover moved the court to reconsider, alter, amend, or vacate the court's summary judgment pursuant to CR 59.05. In the accompanying

memorandum, Vanover contended that the dismissal was procedurally improper because the court did not rule on the pending motion to amend the complaint (and, therefore, the summary judgment could not be a final order) and that KRS 381.225 did not invalidate the agreement. And even if the Option Agreement was invalid, Vanover continued, the court failed to sever the offending provision or reform the agreement pursuant to KRS 381.226. He argued that the First Option and Refusal Option arose from a nondonative transfer (the Option Agreement) and were therefore not subject to and could not be voided by limitations in KRS 381.225(1)(a). In response, the defendants pointed out that Vanover improperly raised new legal arguments in his CR 59.05 motion.

The court heard arguments from the parties in January, and on February 24, 2022, it entered an order ruling on Vanover's pending motions. The court first denied the motion to alter, amend, or vacate, noting that Vanover had improperly used his CR 59.05 motion to raise new arguments that had not been raised prior to the entry of the summary judgment. It also reaffirmed the legal reasoning in its December 8 order. The court then denied the motion to amend the complaint as futile. The amended complaint did not state a cause of action for

fraud, and a misrepresentation claim arising from a real estate transaction was not viable based upon Kentucky's Statute of Frauds. This appeal now follows.[1]

On appeal, Vanover argues that the circuit court erred as a matter of law in refusing to enforce the Refusal Option for several reasons, including misapplication of the law, the refusal to consider his arguments set forth in the motion to reconsider, and the denial of his motion to amend the complaint. As these represent questions of law, we shall review Vanover's arguments *de novo*. *See Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transp. Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998) ("The construction and application of statutes is a matter of law and may be reviewed *de novo*."); *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) ("Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue de novo.").

For his first argument, Vanover asserts that KRS 381.225 does not apply to the Refusal Option or render it void as that statute expressly exempts nondonative transactions like the one at issue in this appeal. The circuit court found that the Refusal Option was void under KRS 318.225(1)(a), which provides

---

[1] Jack passed away on July 13, 2022, and Martha was named as the executrix of his estate and substituted in his place after the notice of appeal was filed.

that "[a] future interest or trust is void if it suspends the power of alienation for longer than the permissible period." That subsection also defines "the power of alienation" as "the power to convey to another an absolute fee in possession of land, or full ownership of personalty." Finally, this subsection provides that "[t]he permissible period is within twenty-one (21) years after the death of an individual or individuals then alive." The defendants (now the appellees) argue that the circuit court properly applied the law and dismissed Vanover's complaint.

Vanover relies upon KRS 381.225(4)(c) to argue that his property rights in the present case are expressly exempted from the 21-year time limitation set forth in KRS 381.225(1)(a) because these rights arose from a nondonative transfer.

The appellees disputed Vanover's ability to raise this argument before the circuit court and continue to dispute it in this appeal. They rely upon the Supreme Court of Kentucky's statement in *Gullion v. Gullion*, 163 S.W.3d 888, 893 (Ky. 2005), that "[a] party cannot invoke CR 59.05 to raise arguments and to introduce evidence that should have been presented during the proceedings before the entry of the judgment." They assert that Vanover is not entitled to a "second bite at the apple" after hiring new counsel.

On the other hand, Vanover argues that the circuit court's summary judgment was not final and appealable because the court had not yet ruled on a

pending motion to amend the complaint; the court did not rule on that motion until it did so in the order denying the CR 59.05 motion.  He asserts that "[u]ntil a final judgment is entered, all rulings by a court are interlocutory, and subject to revision." *JPMorgan Chase Bank, N.A. v. Bluegrass Powerboats*, 424 S.W.3d 902, 909 (Ky. 2014).  He also points out that he did not raise any new evidentiary issues and had in fact argued in his response to the summary judgment motion that the Refusal Option did not violate KRS 381.225.  Therefore, Vanover argues that he properly raised this issue in his original response and that the circuit court should have considered his argument.

We agree with Vanover that, because the summary judgment was interlocutory due to the pending motion to amend the complaint and because he addressed the application of KRS 381.225 and the lack of restraint on alienation in his response to the motion for summary judgment, he was able to raise the issue related to the application of KRS 381.225(4)(c).  The court was not precluded from considering this argument in the CR 59.05 motion.  Therefore, we shall consider whether the Refusal Option was excepted from the application of KRS 381.225(1)(a).

In 2010, the General Assembly abrogated the common law Rule Against Perpetuities:  "An interest created in real or personal property shall not be void by reason of any rule against perpetuities, whether the common law rule or

otherwise. The common law rule against perpetuities shall not be in force in this Commonwealth." KRS 381.224. At the same time, the General Assembly enacted two additional statutes addressing alienation, KRS 381.225 and KRS 381.226, which were both slightly amended in 2020. KRS 381.225 addresses the permissible period of the power of alienation under a trust or future interest as set forth above, and it expressly carves out exceptions in subsection (4), including nondonative transfers. And KRS 381.226 addresses the applicability of KRS 381.224 and 381.225 to property interests and powers of appointment, and it specifically permits reformation.

Vanover's argument rests on the application of KRS 381.225(4)(c), which provides, in relevant part:

> (4) This section does not apply to limit any of the following:
>
> . . . .
>
> (c) A future interest or a power of appointment arising out of a nondonative transfer[.]

Because his rights arose from a nondonative transfer (the Option Agreement expressly states that Vanover paid Jack $100.00 for the property rights) rather than from a donation or gift, Vanover argues his property rights were not subject to the limitations set forth in KRS 381.225(1)(a). We agree.

Vanover cites to cases from other jurisdictions to support his interpretation of the statute as this is a matter of first impression in Kentucky. We find the legal reasoning in these cases to be persuasive. In *Shaver v. Clanton*, 26 Cal. App. 4th 568, 31 Cal. Rptr. 2d 595 (1994), a California Court of Appeal considered whether a lease amendment that provided for perpetual options to renew was void because it violated rule against perpetuities. "Until 1991, California law applied the rule to commercial transactions and, accordingly, to options to renew. That changed with the adoption of the Uniform Statutory Rule Against Perpetuities. Now, commercial, nondonative transactions are exempt from the rule." *Id*. at 571. The Court held:

> Until the adoption of the Uniform Act, California common law applied the rule against perpetuities to commercial transactions. Accordingly, the rule was applied to such interests as options to renew, rights of first refusal, and commercial leases. The Uniform Act changed California law by explicitly excluding such commercial transactions from coverage under the rule. The rule is now irrelevant to such transactions: "It makes no sense to apply a rule based on family-oriented donative transfers to interests created by contract whose nature is determined by negotiations between the parties." (Rep., *supra*, at p. 2516.) "The rationale for this exclusion is that the rule against perpetuities is a wholly inappropriate instrument of social policy to use as a control over such arrangements. The period of the rule – a life in being plus 21 years – is not suitable for nondonative transfers . . . ." (1991 Addition to Law Revision Com. com., 54A West's Ann. Prob. Code, § 21225 (1994 pocket supp.) p. 60 [hereafter Commission 1991 Addition].)

> The Law Revision Commission Comment
> explains, "[S]ubdivision (a) [of section 21225,] is . . .
> inconsistent with decisions holding the common law rule
> to be applicable to the following types of property
> interests or arrangements when created in a nondonative,
> commercial-type transaction, as they almost always are:
> options [citation]; preemptive rights in the nature of a
> right of first refusal [citations]; leases to commence in the
> future, at a time certain or on the happening of a future
> event . . . ." (Com. 1991 Addition, *supra*, at p. 60.)

*Shaver*, 26 Cal. App. 4th at 574 (footnotes omitted). *See also Bauermeister v.*

*Waste Management Co. of Nebraska, Inc.*, 280 Neb. 1, 9, 783 N.W.2d 594, 600

(2010) ("Our decision is consistent with the courts and commentators, noted above,

who have observed that the purposes supported by the rule against perpetuities do

not logically apply to commercial transactions such as options.").

We agree with Vanover that, in enacting KRS 381.225, the General

Assembly chose to include an express, statutory exception for nondonative

transfers as set forth in subsection (4)(c). While the parties were family members

rather than commercial entities, the Option Agreement specifically set forth that

Vanover paid Jack $100.00 for the property rights under the option, making this a

nondonative transfer under the statute and, thus, exempt from the limitations of

KRS 381.225(1)(a). And for purposes of this legal issue, the appellees conceded

that the $100.00 had been paid. We reject the appellees' suggestion that we hold

that the $100.00 payment did not constitute a nondonative transfer because "a

meager $100 was hardly a valuable consideration." That issue is not before the

Court, and neither is the question as to whether the transfer took place at all, which would be considered an issue of fact. Accordingly, the circuit court erred as a matter of law in holding that the Refusal Option contained in the Option Agreement was void as violative of KRS 381.225 because it failed to consider or apply the exception in KRS 381.225(4)(c).[2]

Based upon our holding above, we need not address Vanover's remaining arguments as to whether the circuit court properly held that the Refusal Option was void.

Next, we shall consider Vanover's argument that the circuit court erred when it denied his motion to amend his complaint to state a cause of action for fraud against Jack. In the order denying the CR 59.05 motion, the court found that the motion to amend was futile, that the tendered amended complaint failed to state a cause of action for fraud, and that "a misrepresentation claim arising from a real estate transaction is not viable based upon the Kentucky Statute of Frauds."

"In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing

---

[2] The validity of the First Option in the Option Agreement is not before the Court as Vanover conceded below that he brought this action to enforce only the Refusal Option.

injury." *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. App. 1978)). Here, Vanover was seeking to state a cause of action for fraud in the inducement against Jack based upon his deposition testimony that he never intended to comply with the terms of the Option Agreement. "One may commit 'fraud in the inducement' by making representations as to his future intentions when in fact he knew at the time the representations were made he had no intention of carrying them out[.]" *Major v. Christian Cnty. Livestock Market, Inc.*, 300 S.W.2d 246, 249 (Ky. 1957). We agree that Vanover set forth in his brief allegations sufficient to plead the elements of a cause of action for fraud, although we offer no opinion as to whether that cause of action is viable.

We also hold that the circuit court erred in stating that this cause of action was barred by the Statute of Frauds. *See Rickert*, 996 S.W.2d at 471 ("Kentucky is with the majority of states in holding that the statute of frauds is not a bar to a fraud or promissory estoppel claim based on an oral promise of indefinite employment."); *Hanson v. American National Bank & Tr. Co.*, 865 S.W.2d 302, 308 (Ky. 1993), *overruled on other grounds by Sand Hill Energy, Inc. v. Ford Motor Co.*, 83 S.W.3d 483 (Ky. 2002) ("[O]ur statutes do not abrogate the common law remedy for fraud merely because the fraudulent misrepresentation is

not in writing."). Accordingly, we hold that the circuit court erred as a matter of law in denying Vanover's motion to file a first amended complaint.

For the foregoing reasons, the Laurel Circuit Court's summary judgment and the order denying the CR 59.05 motion and the motion to file a first amended complaint are reversed, and this matter is remanded for further proceedings in accordance with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Medrith Lee Norman
Lexington, Kentucky

BRIEF FOR APPELLEES:

A. Aaron Hostettler
London, Kentucky