Lanzinger, J.,
dissenting.
{¶ 68} BP Oil Company, a competitor of Sunoco, Inc. (R & M), took advantage of a contract extension with Toledo Edison Company. Although Sunoco had the same opportunity to do so, it did not seek an extension. Nevertheless, the majority holds that the most-favored-nation clause within Sunoco’s contract guarantees Sunoco the benefit of BP’s extended term. In part, the majority justifies its holding as enforcing the intent of the parties. Although Sunoco asserts that this result was intended, Toledo Edison vigorously disputes it and contends that Sunoco is not entitled to extend the duration of its contract to match BP’s because the contract duration is not included within the meaning of “arrangement.” I agree and therefore dissent.
*412 {¶ 69} The contract between Sunoco and Toledo Edison is an electric-service agreement (“ESA”) approved by the Public Utilities Commission of Ohio (“PUCO” or “commission”) under R.C. 4905.31. This statute authorizes the PUCO to supervise a special discounted arrangement between an electric utility and one of its customers. “Every such schedule or reasonable arrangement shall be under the supervision and regulation of the commission, and is subject to change, alteration, or modification by the commission.” (Emphasis added.) R.C. 4905.31(E). As part of its regulatory authority, the commission approved a stipulation that special contracts extended under the electric-transition-plan case {In re Application of Ohio Edison Co. (July 19, 2000), PUCO No. 09-1212-EL-ETP) but not extended under the rate-stabilization-plan case (In re Application of Ohio Edison Co. (Oct. 28, 2003), PUCO No. 03-2144-EL-ATA) would continue only until February 2008. In re Application of Ohio Edison Co., PUCO No. 05-1125-EL-ETA. The commission held that the most-favored-nation clause did not entitle Sunoco to the ten-month extension that BP had negotiated with Toledo Edison.
{¶ 70} Sunoco bears a heavy burden in challenging PUCO orders by showing “that the commission’s decision is against the manifest weight of the evidence or is clearly unsupported by the record.” Monongahela Power Co. v. Pub. Util. Comm., 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29, citing AT & T Communications of Ohio, Inc. v. Pub. Util. Comm. (2000), 88 Ohio St.3d 549, 555, 728 N.E.2d 371.
{¶ 71} The majority opinion contends that in determining the end date of Sunoco’s ESA, the PUCO (1) improperly relied on the title of the most-favored-nation clause, (2) misread the first sentence of the disputed clause, and (3) erred in finding that the word “arrangement” does not include the duration of the contract. Although the commission’s position differs from the majority’s view, the PUCO orders are neither unsupported by evidence in the record nor against the manifest weight of the evidence. I would uphold them against the three points discussed by the majority as well because of court holdings in other jurisdictions.
Reference to Heading of Contract Clause
{¶ 72} I would hold that Sunoco waived the argument that the commission improperly relied on the title of the disputed clause by failing to include this point in its application for rehearing and in its notice of appeal. Nevertheless, even if Sunoco is held not to have waived the point, the commission’s reference is supportable. Section 10.6 of Sunoco’s ESA explains that clause headings are “for the purpose of convenience and ready reference” and “shall not be deemed to define, limit or extend the scope or intent of the clauses to which they pertain.”
*413 {¶ 73} The commission in its order does refer at several places to the ESA section titled “Comparable Facility Price Protection,” and the majority makes much of the commission’s use of the phrase “price protection provision.” But both parties also use the words “most-favored-nation clause” in referring to and in discussing the meaning of Section 9, although neither phrase is found within the disputed section, which reads in full:
{¶ 74} “9.1 A Comparable Facility shall be defined as an operating oil refinery and located within the certified service territory of the Toledo Edison Company, as such service territory is defined on January 1, 1996.
{¶ 75} “9.2 If the Company provides an arrangement, rates or charges which is or may be in effect at any time during the term of this Agreement, to a Comparable Facility within its certified territory, then the Customer will have the right to utilize that arrangement, rates or charges for its Facility. The Customer must comply with all other terms and conditions of the arrangement including firm and interruptible load characteristics/conditions.”
{¶ 76} The commission determined that this section did not specifically discuss the duration of the contract. Nothing mentions- the length of time that the contract is in effect. Section 9 of Sunoco’s ESA does refer to “an arrangement, rates or charges,” which, if offered to a comparable facility, will be available to the customer. Section 9.1 defines a comparable facility, and Section 9.2 offers a “right to utilize” a similar arrangement, i.e., provides price protection between comparable facilities during the term of the ESA. As the commission correctly noted, neither paragraph of Section 9 deals with the termination date of the ESA. The title “Comparable Facility Price Protection” for this clause simply describes the language of this “most-favored-nation clause,” and the title does not limit or extend its scope or intent.
Reading of First Sentence of Clause
{¶ 77} The second alleged error relates to the commission’s reading of the first sentence of Section 9.2. “If the Company provides an arrangement, rates or charges which is or may be in effect at any time during the term of this Agreement, to a Comparable Facility within its certified territory, then the Customer will have the right to utilize that arrangement, rates or charges for its Facility.” Instead of seeing this sentence as guaranteeing a customer an opportunity to obtain treatment similar to that of a comparable facility during the ESA’s term, the majority states that it “merely means that Sunoco can invoke the most-favored-nation clause only ‘during the term of this Agreement.’ Stated another way, the first sentence limits Toledo Edison’s obligations under the most-favored-nation clause to the ‘term of this Agreement,’ meaning that Sunoco has no right to invoke the clause after the agreement has expired.” This seems to me to rewrite the language.
*414 {¶ 78} More importantly, the commission has been reasonable in observing that the duration or “term” of the contract is referred to separately in Sunoco’s ESA from the “terms and conditions of the arrangement.” The distinction is also seen in the second sentence of Section 9.2, which gives the customer a reciprocal obligation: “The Customer must comply with all other terms and conditions of the arrangement including firm and interruptible load charaeteristics/conditions.” (Emphasis added.)
{¶ 79} Thus, if the company provides an “arrangement, rates or charges” while the agreement is in effect, i.e., at any time during the term, to a comparable facility (a competitor of the customer), the customer will then have the right to utilize that arrangement, rates or charges for its own facility. There is no need to reword the clause — -an arrangement that benefits the competitor within the meaning of this section gives the customer the opportunity to make the same arrangement.
The Meaning of “Arrangement”
{¶ 80} The majority interprets the term “arrangement” through a complicated method while ignoring a fundamental point. Although the word “arrangement” is undefined within the contract, the term has a specific meaning set forth in R.C. 4905.31. R.C. 4905.31, which governs an ESA, states that a public utility is not prohibited from “filing a schedule or establishing or entering into any reasonable arrangement with another public utility or with one or more of its customers, consumers, or employees * * * providing for any of the following :
{¶ 81} “(A) The division or distribution of its surplus profits;
{¶ 82} “(B) A sliding scale of charges, including variations in rates based upon stipulated variations in cost as provided in the schedule or arrangement^]
{¶ 83} “(C) A minimum charge for service to be rendered unless such minimum charge is made or prohibited by the terms of the franchise, grant, or ordinance under which such public utility is operated;
{¶ 84} “(D) A classification of service based upon the quantity used, the time when used, the purpose for which used, the duration of use, and any other reasonable consideration;
{¶ 85} “(E) Any other financial device that may be practicable or advantageous to the parties interested.” (Emphasis added.)
{¶ 86} Significantly the term “arrangement” does not include duration of the contract or the contract term. The statute establishes the obligation of the utility to file the “schedule or arrangement” with the PUCO, and the section concludes, “Every such schedule or reasonable arrangement shall be under the supervision and regulation of the commission, and is subject to change, alteration, or modification by the commission.” (Emphasis added.) The ESA thus relates to *415 special pricing, and “arrangement” refers to the types of “financial devices” that are listed in R.C. 4905.31.
Other Jurisdictions
{¶ 87} Courts “consistently have found that contracts with most favored nation clauses end on the termination date specified in the contract unless the contract itself contains specific language authorizing an extension of the contract’s term.” Majority opinion at ¶ 48. See Baker Car & Truck Rental, Inc. v. Little Rock (1996), 325 Ark. 357, 362, 925 S.W.2d 780. See also Waterloo Furniture Components, Ltd. v. Haworth, Inc. (C.A.7, 2006), 467 F.3d 641, 646 (a most-favored-nation clause “only provides insight into the parties [sic] obligations during the term of the contract. It does not extend the Agreement past its express termination date”). The fact that the contracts in these cases were attempted to be extended after their expiration, while Sunoco tried to extend the express termination date before the ESA expired, is not significant — the point is that the most-favored-nation clause does not function to extend the ESA’s duration unless authority to do so exists within the contract.
{¶ 88} As an example of the type of extension authority expressed within a contract, the most-favored-nation clause at issue in Saikhon, Inc. v. United Farm Workers of Am., AFL-CIO (1980), 104 Cal.App.3d 1, 163 Cal.Rptr. 488, 489, specifically authorized a contracting party to extend its contract to a “termination date” negotiated by the union with another produce company “during the term” of the agreement. This type of language is noticeably absent from Sunoco’s ESA.
{¶ 89} The Minnesota Supreme Court held that a purchaser of electricity could not, under the most-favored-nation clause, extend the duration of its contract based upon the electric utility’s contract with another customer. Eveleth Taconite Co. v. Minnesota Power & Light Co. (1974), 301 Minn. 20, 221 N.W.2d 157. The court stated that the phrase “terms or conditions,” as used in the most-favored-nation clause, “was intended by the parties to mean the covenants and provisions” of the agreement “other than its duration and that the word ‘term’ * * * has a distinct meaning signifying the period of duration of the contract during which more favorable terms and conditions could, upon the election of plaintiff, be substituted into the agreement.” Id. at syllabus. Eveleth relied upon a Colorado decision that also distinguished a contract’s “term” or duration from the contract’s “terms,” which are the “ ‘conditions, limitations and propositions which comprise and govern the acts which the contracting parties agree expressly or impliedly to do or not to do.’ ” Id. at 161, quoting Hurd v. Whitsett (1878), 4 Colo. 77, 84. As Eveleth explained, the use of two separate phrases in the most-favored-nation clause, that is, “term” and “terms or conditions” in different parts of the clause and in different contexts, was further evidence that *416 the parties had intended those words to have different meanings. Id. Although the majority attempts to distinguish Eveleth on the ground that it uses the phrase “arrangement, rates and changes” in place of “terms or conditions,” this is a distinction without a difference. There is no authority within the ESA for Sunoco to extend its own contract term simply because BP took advantage of an opportunity to lengthen its ESA with Toledo Edison.
Conclusion
{¶ 90} I cannot agree with the majority opinion that a most-favored-nation clause is a tool for extending a contract term beyond its termination date. Nothing in Sunoco’s ESA gives it that authority. Section 8 language relates to the “term and effective date” of the contract, while Section 9 includes the “arrangements, rates and charges” that are to be offered to a competitor during a contract term. Had Sunoco wished to obtain a longer ESA, it could have negotiated such an agreement by including specific language authorizing a longer or extended term, or it could have opted to extend its contract duration in the summer of 2004 as authorized by the commission’s RSP order. Because it did neither, the commission did not err in denying Sunoco the relief it requested.
{¶ 91} I respectfully dissent and would hold that the PUCO acted reasonably in determining that Sunoco’s contract ended in February, rather than December, 2008. I would affirm the PUCO orders in all respects.