# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 9, 2015 Session

## OPEN LAKE SPORTING CLUB v. LAUDERDALE HAYWOOD ANGLING CLUB

### Appeal from the Chancery Court for Lauderdale County
### No. 14811    William C. Cole, Judge
_____

### No. W2014-00436-COA-R3-CV – Filed August 25, 2015
_____

At issue in this case is the interpretation of an agreement that, *inter alia*, provides for a lease for the use of Open Lake in Lauderdale County by Lauderdale Haywood Angling Club. Following summary judgment proceedings, the trial court determined that the parties' agreement had terminated on two grounds. After declaring that all rights under the agreement had ended, it later required one of the parties to post a bond in order to continue using certain duck blinds for the remainder of the 2013-2014 duck hunting season. Although we conclude that one of the grounds relied upon by the trial court in declaring that the agreement was terminated was in error, we affirm the entry of summary judgment on the other ground. We also affirm the propriety and amount of the bond ordered by the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

William C. Sessions, III, Memphis, Tennessee, for the appellant, Lauderdale Haywood Angling Club.

Clinton H. Scott, Jackson, Tennessee, and J. Brandon McWherter, Franklin, Tennessee, for the appellee, Open Lake Sporting Club.

### OPINION

### Background and Procedural History

This appeal stems from a contentious and long-standing dispute between two hunting clubs in West Tennessee, Open Lake Sporting Club ("Open Lake Club") and

Lauderdale Haywood Angling Club ("LHAC"). The parties' dispute has generated several appeals to this Court.[1] Because the basic background facts are adequately addressed in our prior opinions, we need not restate them all here. For the sake of clarity, however, some context is appropriate.

In 1988, Open Lake Club filed suit against LHAC seeking to enjoin LHAC's members from using the body of water known as Open Lake. *Open Lake Sporting Club v. Lauderdale Haywood Angling Club*, No. W2009-02269-COA-R3-CV, 2011 WL 198624, at *1 (Tenn. Ct. App. Jan. 13, 2011). Although LHAC filed an answer opposing the request for injunctive relief prayed for in Open Lake Club's complaint, it also filed a counterclaim alleging that a dispute had arisen as to the location of a common boundary line between the two clubs. *Id.* at *2. Following a trial, the trial judge ruled that LHAC could not use the lake at issue except as permitted by Open Lake Club, but nevertheless, he concluded that he could not rule on the boundary line issue until additional proof was presented. *Id.* at *2-3.

Despite the trial court's decision to defer ruling on the boundary line dispute, the parties subsequently entered into a written settlement agreement. *Id.* at *3. This agreement, which is dated October 25, 1992, reads as follows:

> I.     Open Lake Sporting Club (OLSC) shall grant Lauderdale Haywood Angling Club (LHAC) sport fishing and pleasure boating privileges on the waters of Open Lake and the portion of the Reach owned by OLSC in exchange for the use and control of LHAC properties west and south of the paved road leading to the parking lot at Open Lake, the LHAC parking lot properties west of Gillespie cabin, and that portion of the Reach owned by LHAC. OLSC shall pay LHAC $10.00 annually for the use of said property.
>
> II.     OLSC shall lease to LHAC at a fee of $10.00 annually four waterfowl blinds sites on the water of Open Lake in the prime waterfowl hunting area between the Griggs blind and Mills Pocket. These sites, as selected by LHAC, shall be the Griggs blind, the Maxwell blind, the Buckhorn Point area, and the Brown Blind. OLSC shall also extend to LHAC the use of other blind sites south of the Griggs blind along East Bank, west of the Brown blind along Out of Bounds bank, in the Sand Lake area and the Leroy Gillespie blind on Right Arm at no charge.

---

[1] The first appeal generated by the parties' dispute was dismissed for the lack of a final judgment. *Open Lake Sporting Club v. Lauderdale Haywood Angling Club*, No. W2009-02269-COA-R3-CV, 2011 WL 198624, at *3 (Tenn. Ct. App. Jan. 13, 2011). The other appeals before this Court concerned issues relating to a boundary line dispute between the parties. *See id.* at *7; *Open Lake Sporting Club v. Lauderdale Haywood Angling Club*, No. W2014-01574-COA-R3-CV, slip op. at 3 (Tenn. Ct. App. Aug. 18, 2015).

III.    It is agreed by both parties that OLSC shall retain the exclusive use of all properties to include Right Arm owned or leased of OLSC north and east of Open Lake and the Reach except for the Leroy Gillespie blind on Right Arm.  It is understood and agreed that access to and from the Leroy Gillespie blind shall not be across said OLSC leased properties, unless written permission granted by lessor.  Violation of this paragraph shall be cause for termination of LHAC's Leroy Gillespie blind usage without affecting other provisions of this agreement.

IV.    LHAC hereby agrees to restrict LHAC shares to the present number of 35 shares or less and shall provide OLSC with a current membership list annually.

V.    LHAC members shall be entitled to be accompanied by unlimited guest(s) while sportfishing, pleasure boating and waterfowl hunting on the water of Open Lake and the Reach.  For the purpose of this agreement, a LHAC member is defined as a shareholder, shareholder's spouse, or shareholder's dependent children up to the age of 18 years old or, as long as a dependent child continues as a full-time student at a two or four year college or university, up to the age of 25 years old.

VI.    A Sports Committee shall be appointed to establish reasonable rules for sports fishing, pleasure boating, and waterfowl hunting on the water of Open Lake and the Reach for both OLSC and LHAC.  The committee shall be a five person committee consisting of two shareholders of LHAC appointed by LHAC, two shareholders or [sic] OLSC appointed by OLSC and chaired by the President of OLSC or his designee who shall have voting privileges only in the case of a tie vote.  All decisions shall not be unduely [sic] restrictive nor discriminatory towards either club.

VII.    OLSC and LHAC agree to abide by all provisions of this agreement and rules established by the Sports Committee.  Failure of either party to correct a violation of a provision of this agreement or a rule established by the Sports Committee within 5 days after receiving written notice from the other party shall be cause for termination of all privileges of the individual share in violation.  If either party refuses to act upon a violation after a 5 day written notice from the other party this agreement is subject to termination.

VIII. The initial term of this agreement shall be for a period of ten years.  It is the intent of both clubs that this agreement settle once and for all the lengthy controversy existing between the clubs.  This agreement will end

3

all litigation between the clubs, will be made part of the final court order and, as long as the parties abide by the agreement, will be renewed under terms similar to those outlined in the agreement. As to the boundary line dispute, it is understood that the findings of the third party surveyor selected by the Court shall be final.

IV. [sic]    In the event that OLSC should sell Open Lake, this agreement shall terminate on the sale closing date if that date is before the end of the term of this agreement. In the event that OLSC should sell Right Arm, LHAC's usage of the Leroy Gillespie blind on Right Arm shall terminate on the sales closing date without affecting other provisions of this agreement.

On November 11, 1992, shortly after the agreement was executed, the trial court entered a final decree incorporating the parties' agreement in its entirety.

The present appeal is directly concerned with whether the parties' agreement has any continuing validity. On May 21, 2012, Open Lake Club filed a complaint in the Lauderdale County Chancery Court asking the trial court to declare the rights and status of the parties in relation to the agreement. In pertinent part, Open Lake Club asserted that the trial court should declare that the parties' agreement would soon expire. According to Open Lake Club, the terms of Paragraph VIII of the agreement dictated that the agreement would expire at the end of one renewal term, an ending date twenty years from the agreement's October 25, 1992 execution.

LHAC answered the complaint on August 7, 2012, and on March 28, 2013, Open Lake Club filed a motion for summary judgment. In its motion for summary judgment, Open Lake Club asserted that no genuine issues of material fact existed and that the trial court should declare the parties' agreement to be expired as a matter of law. Open Lake Club's motion was accompanied by a memorandum of law and a statement of undisputed material facts. In seeking a declaration that the parties' agreement had expired on October 25, 2012, Open Lake Club asserted that the agreement "clearly and unambiguously states that it is for a term of ten (10) years with a renewal term of ten (10) years." On August 5, 2013, LHAC responded to Open Lake Club's motion for summary judgment. Although LHAC admitted that the parties entered into a settlement agreement on October 25, 1992, and agreed that its renewal terms were unambiguous, its interpretation differed from that of Open Lake Club. Whereas Open Lake Club contended that the agreement provided for only one ten-year renewal term, LHAC maintained that such an interpretation twisted the meaning of the agreement into "something that the parties did not contemplate, negotiate or set forth." According to LHAC, the agreement did not provide for a single renewal option, but rather, provided that it would be renewed into the future as long as the parties abided by its terms.

4

A hearing on Open Lake Club's summary judgment motion took place on August 13, 2013. In addition to focusing on Open Lake Club's contention that the parties' agreement expired upon the passage of a second ten-year term, the hearing addressed the relevancy of LHAC's continuing litigation with respect to the findings of a third-party surveyor who had been appointed pursuant to the parties' agreement.[2] On December 17, 2013, the trial court entered an order granting Open Lake Club's motion for summary judgment. In granting the motion, the trial court declared that all relief afforded to LHAC under the parties' agreement had ended. In part, the trial court's order stated as follows:

> 2. The dispute between the parties is well-defined. OLSC contends that the rights afforded LHAC in the Agreement expired on October 25, 2012, which would include the initial ten year term referenced in the Agreement and one renewal term. LHAC contends that the rights afforded LHAC in the Agreement should be renewed and extended into perpetuity, as long as the parties abide by the Agreement. In its Response in Opposition to OLSC's Motion for Summary Judgment, LHAC agrees that the language in question is clear and unambiguous, thus the interpretation of the contract is a question of law for the Court.

> 3. In OLSC's Motion for Summary Judgment, OLSC requests that judgment be rendered in its favor, with a finding that the Agreement between OLSC and LHAC expired on October 25, 2012, and that all relief afforded to LHAC under the Agreement ended on such date. The Court agrees. Perpetual contracts are not favored under the law, and appellate authority indicates that courts are loathe to infer a perpetual obligation. Moreover, courts are reluctant to interpret contracts providing for a perpetual or unlimited contractual right unless the contract clearly states that is the intention of the parties. In this case, if the interpretation sought by OLSC is correct, then the Agreement expired on October 25, 2012. On the other hand, if the interpretation sought by LHAC were found to be correct, then the Agreement could extend into perpetuity, which the law disfavors.

> 4. The Court also notes that the litigation between the parties has not ended, as evidenced by the boundary line dispute still in litigation today under docket number 7191. By the Agreement's plain terms, a cessation of the litigation was part of the consideration of the Agreement.

---

[2] As we detailed in *Open Lake Sporting Club v. Lauderdale Haywood Angling Club*, No. W2009-02269-COA-R3-CV, 2011 WL 198624, at *3 (Tenn. Ct. App. Jan. 13, 2011), the parties agreed that the findings of a third-party surveyor selected by the trial court would be final with respect to their boundary dispute.

5.      Upon consideration of the agreed facts, the applicable law, the arguments of counsel, and the record as a whole, **the Court finds that the Agreement has expired, either because of the passage of the second term of ten years on October 25, 2012 or because of the continuing litigation between the two clubs, which would give OLSC the right to terminate the Agreement**.

(Emphasis added).

After entry of this order, Open Lake Club gave notice to LHAC that its members should remove their possessions from Open Lake by December 29, 2013. In response to this notice from Open Lake Club, LHAC filed a petition for injunctive relief and sought to enjoin Open Lake Club from removing LHAC's members' possessions from certain duck blinds on Open Lake. Although Open Lake Club filed a response in opposition to LHAC's request for an injunction on January 8, 2014, it argued that LHAC should be required to post a bond sufficient to protect Open Lake Club's interests should the trial court decide to stay enforcement of its December 17, 2013 order granting summary judgment. A hearing on these matters took place on January 9, 2014, at which time the trial court issued an oral ruling that a stay would be granted upon the timely posting of a bond by LHAC. Shortly thereafter, on January 16, 2014, LHAC filed a motion to alter or amend the trial court's order granting summary judgment in favor of Open Lake Club.

On February 4, 2014, the trial court entered an order on the issues related to LHAC's request for injunctive relief. Pursuant to the order, the trial court directed that enforcement of its final decree should be stayed "until such time that the Final Decree is appealed or becomes non-appealable due to the expiration of the time period to appeal." The stay, which was specifically conditioned upon the posting of a $20,000.00 bond, was entered for the limited purpose of allowing LHAC to use a portion of the lake for the remainder of the 2013-2014 duck hunting season. An order denying LHAC's motion to alter or amend was later entered on March 31, 2014. This appeal followed.

### Issues Presented

On appeal, LHAC raises several issues for our review, which we have condensed and restated as follows:

1. Whether the trial court erred in ruling that the parties' agreement had expired due to the passage of a second term.
2. Whether the trial court erred in ruling that Open Lake Club had the right to terminate the agreement due to LHAC's continuing litigation.
3. Whether the trial court erred in ordering LHAC to post a bond to stay execution of the trial court's order granting summary judgment.

6

## Standard of Review

A motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (citation omitted). Because resolving a motion for summary judgment is a matter of law, we review the trial court's disposition on the issue *de novo* without a presumption of correctness. *Id.* at 84 (citation omitted). Moreover, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citation omitted).

## Discussion

Although there is no dispute in this case that the parties entered into an agreement on October 25, 1992 in order to settle the substantive differences between them, the interpretation of that agreement remains a source of heated contention. When Open Lake Club instituted this declaratory judgment action in May of 2012, it prayed for the trial court to declare that the parties' agreement expired twenty years following its execution. The same request accompanied Open Lake Club's March 2013 motion for summary judgment. Although the trial court's order granting summary judgment ultimately concluded that the parties' agreement had expired following one renewal term, as had been prayed for by Open Lake Club, the trial court also declared that the agreement had terminated due to LHAC's continuing litigation with regard to the parties' boundary line dispute. In this appeal, we are tasked with determining whether summary judgment was properly entered according to these grounds.

The outcome of the parties' dispute hinges on a contractual interpretation of their agreement. When reviewing cases involving contract interpretation, "'our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language.'" *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). "The intent of the parties is presumed to be that specifically expressed in the body of the contract." *Id.* at 890. If the language is clear and unambiguous, then the literal meaning of the language is controlling. *Id.* When a provision is susceptible to more than one reasonable interpretation, however, its terms are rendered ambiguous, and "the intention of the parties cannot be determined by a literal interpretation of the language[.]" *Id.* In instances where ambiguity arises in a contract because of an uncertain meaning, the court must apply established rules of construction to determine the intent of the parties. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611-12

7

(Tenn. 2006) (citation omitted). "The meaning of the contract becomes a question of fact only if an ambiguity remains after we have applied the appropriate rules of construction." *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (citation omitted).

We first turn our attention to the trial court's determination that the parties' agreement expired on October 25, 2012, due to the passage of a second ten-year term. Specifically at issue between the parties is the interpretation of the agreement's renewal provision. That provision, which is found at Paragraph VIII, reads as follows:

> **The initial term of this agreement shall be for a period of ten years.** It is the intent of both clubs that this agreement settle once and for all the lengthy controversy existing between the clubs. **This agreement will end all litigation between the clubs, will be made part of the final court order and, as long as the parties abide by the agreement, will be renewed under terms similar to those outlined in the agreement.** As to the boundary line dispute, it is understood that the findings of the third party surveyor selected by the Court shall be final.

(Emphasis added). At the summary judgment stage of litigation, the parties attributed different meanings to the language in this provision. Whereas Open Lake Club contended that the plain language of the agreement stated that it would expire on October 25, 2012, at the end of one renewal term, LHAC argued that the agreement would continue to be renewed into the future as long as the two clubs abided by the agreement. Incidentally, both clubs contended that their respective interpretations were supported by "clear" and "unambiguous" contractual language.

As we perceive it, the essence of the parties' disagreement concerns whether their rights and obligations under the agreement are subject to *perpetual* renewal.[3] Under the law, perpetual obligations are disfavored. *Higgins v. Oil, Chem. & Atomic Workers Int'l Union, Local # 3-677*, 811 S.W.2d 875, 881 (Tenn. 1991) (citations omitted) (noting that "the law does not favor perpetual contracts"); *Collateral Plus, LLC v. MAX Well Med., Inc.*, No. M2010-00638-COA-R3-CV, 2011 WL 1167192, at *6 (Tenn. Ct. App. Mar. 29, 2011) (citations omitted) (stating that "[p]erpetual contracts are not favored under the law"); *Johnson v. Welch*, No. M2002-00790-COA-R3-CV, 2004 WL 239756, at *10 (Tenn. Ct. App. Feb. 9, 2004) (stating that "courts are loathe to infer a perpetual obligation"); *Parker v. Union Planters Corp.*, 203 F.Supp.2d 888, 901 (W.D. Tenn. 2002) (citation omitted) (noting that courts are reluctant to construe agreements as

---

[3] By way of distinction, we note—as do both parties in their briefs—that the agreement does not provide for perpetual, absolute rights. In addition to containing provisions pursuant to which the agreement may be terminated for cause, the agreement contains a provision under which termination will occur if Open Lake Club sells Open Lake.

8

providing for a perpetual right absent a clear intention in the agreement that such is the intention of the parties). Here, we must determine the relevancy this principle has to the renewal provision at issue. Having reviewed the parties' briefs, we observe that neither club has presented us with Tennessee authority that specifically addresses the legal standard required for establishing a perpetual renewal provision. In our research, we have found one[4] Tennessee decision that tangentially addresses the issue. In *Mecklenburg Real Estate Co. v. Kyoleum Co.*, 218 S.W. 821 (Tenn. 1920), the Tennessee Supreme Court reviewed a dispute concerning several lease agreements. In the context of its discussion, the court referenced other authority—without disaffirming it—stressing that covenants for perpetual renewal must not rely on inference, but rather, must be "clearly and certainly" made. *Id.* at 822.[5] Although the specific level of scrutiny invariably differs in some jurisdictions,[6] this standard appears to be the prevailing rule. Perpetual renewal provisions are not forbidden, but they will not be construed to exist unless the parties plainly express their intent to establish them. *Winslow v. Baltimore & Ohio R.R. Co.*, 188 U.S. 646, 655 (1903) ("From the ordinary covenant to renew, a perpetuity will not be regarded as created. There must be some peculiar and plain language before it will be assumed that the parties intended to create it."); *Pults v. City of Springdale*, 745 S.W.2d 144, 146-47 (Ark. Ct. App. 1988) (citations omitted) (noting that although "the right to perpetual renewal of a lease is not forbidden by law," a provision "will not be construed as conferring a right to a perpetual renewal unless the language is so plain as to admit of no doubt of the purpose to provide for perpetual renewal"); *Ginsberg v. Gamson*, 141 Cal. Rptr. 3d 62, 77 (Cal. Ct. App. 2012) (holding that an agreement "must clearly demonstrate the parties' intention" in order for it to be construed as including a right to perpetual renewals); *Carder, Inc. v. Cash*, 97 P.3d 174, 181 (Colo. Ct. App. 2003) (citations omitted) (indicating that "[a] lease will not be construed as conferring a right to perpetual renewals unless its language is so clear and unequivocal that it leaves no doubt that such was the intention of the parties"); *Vokins v.*

---

[4] Although it is clear that Tennessee law disfavors perpetual contractual obligations, the dearth of case law specifically applying that principle to renewal provisions should be no surprise. As a California judge once commented: "[O]pen-ended leases and options in perpetuity must be about as common as polar bear sightings in Death Valley." *Shaver v. Clanton*, 31 Cal. Rptr. 2d 595, 601 (Cal. Ct. App. 1994) (Crosby, J., concurring).

[5] We observe that the Supreme Court's opinion in *Mecklenburg Real Estate Co.* adopted a portion of an order from the chancery court where the legal proceedings in that case had originated. It may be noted that the chancery court language cited by our Supreme Court relied on a New York opinion, *Rutgers v. Hunter*, 6 Johns. Ch. 215 (N.Y. Ch. 1822), to support the proposition that a covenant for a perpetual renewal must be clearly made.

[6] *Compare Lattimore v. Fisher's Food Shoppe, Inc.*, 329 S.E.2d 346, 349 (N.C. 1985) (holding that a right to perpetual renewals will not be found to have been created unless the agreement "contains the terms 'forever', 'for all time', 'in perpetuity' or words *unmistakably* of the same import"), *with Ginsberg v. Gamson*, 141 Cal. Rptr. 3d 62, 77 (Cal. Ct. App. 2012) (declining to hold that certain words be present to establish the right to perpetual renewals, but nonetheless requiring that the parties' intent be clearly demonstrated).

*McGaughey*, 266 S.W. 907, 908 (Ky. 1924) (citations omitted) (stating that perpetual rights will not be construed to exist "unless the language employed clearly and unambiguously indicates that it was the intention and purpose of the parties to do so"); *Lattimore v. Fisher's Food Shoppe, Inc.*, 329 S.E.2d 346, 349 (N.C. 1985) (holding that "covenants for perpetual renewals are not favored and shall not be enforced unless the intent to create them is shown by clear and unequivocal terms in the lease agreement"); *Thaw v. Gaffney*, 83 S.E. 983, 985 (W. Va. 1914) (citation omitted) (providing that the language must be "so plain as to admit of no doubt of the purpose to provide for perpetual renewal").

Under the general rule, where an agreement provides in general terms for a renewal, it shall be construed as providing for only a single renewal. *E.g.*, *Pults*, 745 S.W.2d at 147 (citation omitted). Moreover, whenever there is any uncertainty as to whether an agreement was intended to be renewable in perpetuity, it "will nevertheless be construed as importing but one renewal[.]" *Id.* (citation omitted); *see also Ginsberg*, 141 Cal. Rptr. 3d at 79 (opining that this "longstanding rule" of construction is a "better approach" than remanding the case to the trial court to allow it to consider extrinsic evidence).

Having reviewed the renewal provision at issue between the parties, we cannot conclude that its language plainly establishes the parties' intent to provide for perpetual renewals. The provision simply provides that "as long as the parties abide by the agreement, [the agreement] will be renewed under terms similar to those outlined in the agreement." There is no language signaling an unequivocal intention that the "renewability" of the agreement is to carry past one renewal, much less that it is to otherwise endure into perpetuity.[7] Although the renewal provision provides that the contemplated renewal is to be "under terms similar to those outlined in the agreement[,]" such language does not evidence a clear intent that the parties intended the agreement to be subject to perpetual renewal. *See Winslow*, 188 U.S. at 654 ("It is quite plain that a lease containing a covenant to renew at its expiration with similar covenants, terms, and conditions contained in the original lease is fully carried out by one renewal without the insertion of another covenant to renew."); *see also Vokins*, 266 S.W. at 908 ("[A] covenant to renew a lease is satisfied by only one renewal, and that the renewal clause does not become a part of the renewed lease.").

---

[7] For example, there is not even any language indicating that the agreement will be renewed for "successive" terms, "every ten years", or the like. Although several courts have concluded that such language does not, by itself, establish the right to perpetual renewals, *see, e.g.*, *Carder, Inc.*, 97 P.3d at 182 (citations omitted), the inclusion of such language would certainly be more reflective of an intent to create perpetual renewals than is the wording of the provision before us in this case. Without specifically opining on what language would have been sufficient to establish a right to perpetual renewals, however, we merely hold that the language agreed upon by the parties did not evidence the unequivocal intent that is necessary.

Given the foregoing, we are compelled to conclude that the parties' agreement did, in fact, expire on October 25, 2012. The agreement does not express an unequivocal intention that it is to be renewed perpetually, and as such, it should be construed as providing for only one renewal. We affirm the trial court's entry of summary judgment on this ground.

Next, we address the trial court's determination that the parties' agreement had expired due to continuing litigation between the two clubs. At the outset, we note that this alternative ground for summary judgment was not placed into issue by Open Lake Club. When Open Lake Club filed its complaint for declaratory judgment in May 2012, it specifically sought a declaration that the parties' agreement would expire on October 25, 2012, due to the passage of one renewal term. Open Lake Club's request for relief in its motion for summary judgment was similarly predicated. It was not until the hearing of the summary judgment motion in this matter that the issue of LHAC's continuing litigation vis-à-vis the parties' boundary line became a topic of discussion. Specifically, following argument by LHAC's counsel that the agreement would be "renewed every ten years provided the parties abide by the agreement[,]" the trial judge shared his opinion that the parties were not abiding by the agreement. In pertinent part, he observed that LHAC had moved to set aside a third-party survey that was produced in accordance with the parties' agreement. The litigation relevant to LHAC's motion to set aside this survey was previously discussed in two of our prior opinions. *See Open Lake Sporting Club v. Lauderdale Haywood Angling Club*, No. W2009-02269-COA-R3-CV, 2011 WL 198624 (Tenn. Ct. App. Jan. 13, 2011); *Open Lake Sporting Club v. Lauderdale Haywood Angling Club*, No. W2014-01574-COA-R3-CV (Tenn. Ct. App. Aug. 18, 2015). As we discussed in those opinions, LHAC's motion to set the third-party surveyor's findings aside was predicated on the belief that the third-party surveyor had not conducted an independent survey of the disputed boundary areas. *Open Lake Sporting Club*, 2011 WL 198624, at *4; *Open Lake Sporting Club*, No. W2014-01574-COA-R3-CV, slip op. at 2.

In speaking from the bench at the August 13, 2013 summary judgment hearing, the trial judge commented as follows concerning LHAC's continuing litigation with regard to its motion to set the third-party survey aside:

> Unfortunately, the litigation hasn't ceased, so we have an agreement that, I think, is probably terminable by your client because the litigation hasn't ceased. My thinking would be I could hold the ruling on this issue in abeyance, we have the hearing on Mr. Wilson, and we go from there, or y'all can go back to the drawing board and see if y'all can't reach an agreement. But my inclination -- and I don't know if I can do this on summary judgment or not, but it seems to me that the agreement is over with at your election because of the fact that we have this continuous litigation.

Immediately following these comments, counsel for Open Lake Club stated, "I'm obviously not prepared to make that decision standing here today."

Although the trial court concluded that the parties' agreement had "expired . . . because of the continuing litigation between the two clubs," we are of the opinion that LHAC's actions in filing its motion to set the third-party survey aside did not constitute a breach of the parties' agreement. There is no dispute that the agreement expressed the parties' "intent . . . [to] settle once and for all the lengthy controversy existing between the clubs[,]" and there is no dispute that the agreement stated that it would "end all litigation between the clubs[.]" With that said, however, there is simply nothing in the agreement stating that the commencement of any future litigation between the clubs would serve as a basis for terminating it. We will not read into the agreement a provision that does not exist. Accordingly, we conclude that the trial court erred in declaring that the agreement had ended due to the ongoing litigation with respect to the validity of the third-party survey.

Assuming *arguendo* that this ongoing litigation afforded Open Lake Club with the right to terminate the agreement, we still conclude that the trial court erred in granting summary judgment on this basis. Having reviewed the record transmitted to us on appeal, we note that there is nothing in the record indicating that Open Lake Club ever elected to terminate the agreement because of LHAC's attempts to set the third-party survey aside or asserted this point as a basis for summary judgment. In fact, as previously mentioned, counsel for Open Lake Club expressly stated that he was "not prepared to make that decision" when the trial court discussed a supposed right of election at the August 13, 2013 summary judgment hearing.

LHAC's last issue on appeal challenges the propriety of the $20,000.00 bond required by the trial court's February 4, 2014 order.[8] As discussed previously, the trial court's February 4 order stayed enforcement of its December 17, 2013 decree in order to allow LHAC to use Open Lake for the completion of the 2013-2014 duck hunting season. A trial court's decision concerning a request to stay enforcement of an order is subject to an abuse of discretion standard of review. *See Bunker v. Finks*, No. E2001-01496-COA-R3-CV, 2002 WL 924211, at *6 (Tenn. Ct. App. May 8, 2002) (citation omitted). Having reviewed the arguments advanced in LHAC's brief, we observe that its grievances concerning the bond are twofold. First, LHAC contends that the bond was improperly imposed during the period of the initial stay provided by Rule 62.01 of the Tennessee Rules of Civil Procedure. Second, LHAC maintains that the bond imposed exceeded the parameters allowed by Rule 62. For the reasons discussed below, we reject LHAC's assertions of error on this issue.

---

[8] Although an order was not entered on the matter until February 4, we observe that the trial court had previously ruled that a bond would be necessary to stay execution during the course of the January 9, 2014 hearing.

LHAC's first argument suggests that the trial court ran afoul of Rule 62.01 by requiring the posting of a bond before the expiration of the thirty-day period following the entry of the trial court's December 17, 2013 decree. Although it is true that Rule 62.01 generally prohibits parties from enforcing a judgment until the expiration of thirty days after its entry, the rule also provides that "[i]n injunction and receivership actions . . . an interlocutory or final judgment shall not be stayed after entry unless otherwise ordered by the court and upon such terms as to bond or otherwise as it deems proper to secure the other party." Tenn. R. Civ. P. 62.01. As Open Lake Club explained in its appellate brief, the relief afforded to it in this case was essentially injunctive in nature. It originally brought suit for the trial court to declare that the parties' agreement had expired and for other relief as the trial court deemed just and equitable. When the trial court ultimately concluded that the agreement had expired, it also determined that LHAC's right to use Open Lake had terminated. In light of the nature of relief provided by the trial court's December 17 decree, we agree with Open Lake Club that enforcement of the judgment would not have been stayed absent the order of the trial court. Because the initial stay provided by Rule 62.01 was simply inapplicable, the trial court did not err in conditioning a stay upon the posting of a proper bond.

Although LHAC also suggests that the bond imposed by the trial court exceeded the parameters of Rule 62, we fail to discern any error on the part of the trial court in ordering LHAC to post the bond that it did. In this case, the trial court determined that LHAC no longer had rights to the use of Open Lake. LHAC's continued use of the lake was only made possible by virtue of the trial court's imposition of a stay, and the trial court correctly identified that LHAC's use of the lake had value that required security in the form of a bond. As the chancery court elaborated in its February 4 order:

> The Court notes that it has broad discretion regarding stays as granted by Rule 62.07, which provides that "[n]othing in this Rule shall be construed to limit the power of the court in exceptional cases to stay proceedings on any other terms or conditions as the court deems proper." Considering all the circumstances, the Court agrees that a limited stay of execution is appropriate but only upon LHAC's posting of a bond in an amount necessary to secure and protect OLSC. In setting the amount of the bond, the Court has considered the affidavits . . . filed by [Open Lake Club], the statements of counsel at the hearing, the arguments of the parties, and, to some extent, the agreement of the parties as announced at the hearing.

> Based on the statements of counsel and the record as a whole, it appears to the Court that LHAC's primary use of Open Lake is for duck hunting, fishing, and recreational use. At the hearing, LHAC agreed to refrain from any use of Open Lake for fishing or other recreational use,

13

except for duck hunting through the end of the current duck hunting season on January 26, 2014. Considering all of the circumstances and in light of the agreement by LHAC concerning its limited use of Open Lake, the Court finds that the appropriate amount for the bond is $20,000.00.

We find no error in the trial court's reasoning. As a matter of equity, it was only appropriate that LHAC's continued use of the lake be conditioned upon the posting of a bond. Although LHAC characterizes the bond as "rent disguised as a bond" and suggests that the bond amount will automatically be remitted to Open Lake Club upon this Court's affirmance of the trial court's summary judgment order, this is simply inaccurate. In its February 4 order, the trial court stated as follows: "in the event the Court's Final Decree is affirmed on appeal, then the Court shall set a hearing to determine the amount owed by LHAC to [Open Lake Club] for LHAC's use of Open Lake during the pendency of the limited stay granted herein, for which the bond shall act as security, whether in whole or in part." Contrary to the arguments advanced by LHAC, this language indicates that the $20,000.00 bond is not a preordained payment that will pass to Open Lake Club following our disposition in this appeal. Rather, as is the nature of a bond, it merely secures potential payment for an amount that is to be determined at a later date. Moreover, based on the affidavits signed by Open Lake Club members attesting to the value that certain duck blinds had for the remainder of the 2013-2014 duck hunting season, we cannot conclude that the trial court erred in requiring a bond in the amount of $20,000.00.[9]

## Conclusion

Although we conclude that the trial court erred in concluding that the parties' agreement had ended due to the ongoing litigation associated with LHAC's motion to set aside the third-party survey, we affirm the trial court's conclusion that the parties' agreement expired following the end of one renewal term. The entry of summary judgment was appropriate on that basis. Further, we conclude that the trial court did not err in ordering LHAC to post a $20,000.00 bond to stay execution of its order granting summary judgment. The costs of this appeal are assessed against the Appellant, Lauderdale Haywood Angling Club, and its surety, for which execution may issue if necessary. We hereby remand this case to the trial court for the collection of costs, enforcement of the judgment, and for further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[9] In their affidavits, Open Lake Club members explained that the leasing of duck blinds is a common practice in West Tennessee. Based on the values attested to by its members, Open Lake Club sought to have the trial court impose a bond in an amount over $50,000.00.

14